FLOYD L. MAYBERRY, TRUSTEE OF JOHN FRANKLIN MAYBERRY, IN-
COMPETENT, PLAINTIFF v. CHARLOTTE CITY COACH LINES, INC., A
CORPORATION, WAYNE HEATH THOMAS AND PRESTON DOUGLAS
GRIER, JR., DEFENDANTS.

(Filed 19 July 1963.)

**1. Automobiles § 17—**

The charge of the court in regard to the duty of a motorist, notwith-
standing he is given the right-of-way by a flashing yellow traffic signal,
to keep a lookout commensurate with the danger created by the weather
and the obstructed view of the intersection, and that if he saw or should
have seen the other vehicle approaching under circumstances which gave
or should have given notice that the other motorist could not or would
not stop, he was required to use all precautions reasonably at his com-
mand to avoid collision, *held* not to contain prejudicial error.

**2. Appeal and Error § 39—**

The burden is on appellant not only to show error but that except
for the asserted error a different result was reasonably probable.

APPEAL by plaintiff from *Patton, J.,* December 3, 1962 Regular
Civil "B" Term of MECKLENBURG.

Suit for personal injuries rising out of a collision between an auto-
mobile and a bus in the City of Charlotte. Plaintiff, a passenger in
the automobile, sued the driver of both vehicles and the bus company.
The jury returned a verdict against the driver of the automobile. The
evidence, remarkably free from conflict, tends to show the following:

Plaintiff, a young man twenty-four years of age, and the defendant,
Preston Douglas Grier, Jr., worked at the Charlotte News as route
supervisors. On November 22, 1960 Grier had attended classes at
Charlotte College until noon. Thereafter he worked at the Charlotte
News until 9:30 p.m. when he, plaintiff, and four other employees left
for a full night of "partying." About 5:45 a.m. on November 23,
1960 plaintiff and Grier were returning to the Charlotte News in
Grier's 1958 Chevrolet Convertible which he was operating in a
westerly direction on East Fourth Street. It was raining. Grier intend-
ed to go hunting that morning before reporting for work at noon.

East Fourth Street runs generally east and west. It is forty-three
feet wide and divided into four traffic lanes, two for traffic in each
direction. The width of each lane, from north to south, is 12, 10, 9,
and 12 feet respectively. South Brevard Street runs north and south
and intersects East Fourth Street at right angles. Brevard Street,
north of Fourth, is forty-five feet wide and divided into three lanes
for traffic moving south only. The two outside lanes are eighteen feet

wide; the center lane, nine feet. On the north side of Fourth Street is a pedestrian sidewalk seven feet wide. An eight-foot wide pedestrian crosswalk had been marked off at the eastern edge of the intersection on Fourth Street. Five feet east of its eastern line was a stop line. There was a similar crosswalk on South Brevard Street on the north side of the intersection. In the northeast corner of the intersection is a two-story building flush with the sidewalk on both streets. However, the corner of the building pointing to the intersection is "chopped off." It measures 8½ feet across the corner. There are two utility poles at the curb in the northeast corner.

This intersection was controlled by flashing signal lights installed by the City of Charlotte. The light for Fourth Street flashing red; for Brevard Street, yellow. The applicable ordinance provided:

> "Section 25. FLASHING SIGNALS. Whenever flashing red or yellow signals are used they shall require obedience by vehicular traffic as follows:
>
> "(a) Flashing red (Stop Signal). When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked, and the right to proceed shall be subject to the rule applicable after making a stop at stop sign.
>
> "(b) Flashing yellow (Caution Signal). When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or along said street or highway past such signal only with caution."

A civil engineer who surveyed this intersection for the plaintiff testified that in the daytime the line of vision down Fourth Street, measured from a point at the stop line north of the intersection and approximately three feet west of the line marking off the west traffic lane on Brevard Street, is approximately one hundred and ninety-five feet.

At the intersection of Brevard and Fourth Streets there was a collision between the Grier Chevrolet and a bus of the defendant Charlotte City Coach Lines which was being operated by the defendant Wayne Heath Thomas. Plaintiff was thrown from the automobile. He received injuries which have left him partially paralyzed and mentally incompetent. The circumstances of the collision may best be described in the words of the drivers themselves.

Grier's version:

> ". . .I did not slow down. I continued on the same speed as I came into the intersection.

". . .(W)hen I was in the intersection and I saw the bus, it was just moments before it hit me. I saw it just as it hit me. I saw the bus to my right. The right rear of my automobile was damaged. My automobile was over half way through the interesection at the time it was struck.

". . .It was raining hard enough to have my windshield wiper on . . . The windshield wipers were necessary for you to see where you were going. My lights were on low beam. Visibility was limited to some degree by the rain.

". . .I looked at the flashing red lights after the accident. They were flashing red. I didn't see the lights when I went through, when the accident occurred.

"There was nothing in front of me to block my visibility. I don't know whether I looked to my right before I went through that intersection. I testified I didn't slow down. I was aware that Brevard Street was one-way south. I only had to look in one direction.

"I testified I was doing approximately 20 to 25 miles an hour. I could have been going as much as 25.

"I previously answered your question: 'When you looked to the right — Where were you when you looked right?' by saying 'I was in the intersection.' I say that I saw the bus only moments before the collision occurred. It all occurred in one big flash.

"At the time of the accident, I had been drinking beer, both in North and South Carolina, and had been partying for a period of in excess of seven and one-half or eight hours — after attending school for approximately a half a day. I had been with three different women. I had had no sleep for about twenty-four hours."

Thomas' version (not in sequence):

"At the intersection of Fourth and Brevard I saw a flashing yellow traffic signal. In response to the flashing yellow light, I had slowed the bus down to approximately four or five miles an hour, looked to the left, saw the way was clear, looked to the right and had proceeded to go across Fourth. . .I was in, or near the crosswalk of East Fourth Street when I looked to my left and right. I looked to my left first and then looked to my right. Then I looked straight ahead. . .I don't believe I ever looked again after the first time. I looked one time and no more.

"After I had then started up, back into, in or about the first lane of E. Fourth Street, just like a flash — that's the first time

I saw him. I then brought my bus to a stop. I was in a collision. "He had gone half way into the intersection at the time I first saw him, that much at least. I would say he was approximately twenty-five feet into the intersection when I first saw him.

"At that time I was already in the intersection myself. Everything happened so fast, I really don't know what is the first thing I did when I first saw the automobile. I don't know whether I got to the brakes just that instant. Just a second later I finally stopped.

"The right rear side of the automobile was struck by the bus— the rear part. The point of impact was in the northwest sector of the intersection, over to my right, but coming down South Brevard. It was north of the center line of Fourth Street and west of the center line of Brevard Street.

"At the time I struck the car, not anything much happened to the bus. It didn't give quite a jar to anything. I then braked the bus. The bus stopped about middleways of the intersection approximately.

"I would say that at the speed I was going into that intersection on that particular morning with my air brakes working as they were, I could have stopped that bus without injury to the bus, myself or anyone else in approximately six to eight feet."

The investigating officer found debris in the intersection at about the point where the east line of the westernmost traffic lane for southbound traffic at Brevard Street intersects the north line of Fourth Street if it were extended into the intersection. The Chevrolet was up against a building at the south west corner of the intersection. It was a total loss. From the debris to the Chevrolet was one hundred and twenty-nine feet. He found damage on the left front of the bus, the bumper and panel bent in, tag bent, and left headlight hanging down. Grier told the officer that he had been going about twenty-five miles per hour. The jury exonerated Thomas and the Coach Company of actionable negligence and the plaintiff of contributory negligence. It awarded substantial damages against the defendant Grier. The plaintiff appealed assigning errors in the charge with reference to the defendants Thomas and Coach Company.

*Bradley, Gebhardt, Delaney and Millette by Ernest S. Delaney, Jr., for plaintiff appellant.*

*Lassiter, Moore and Van Allen by James O. Moore and John T. Allred for defendant appellees.*

PER CURIAM.  The actionable negligence of the defendant Grier
is established by his own testimony with absolute finality. As to the
defendant Thomas, the question was whether his failure to observe
Grier's approach constituted negligence which was a proximate cause
of the collision producing plaintiff's injuries. The answer depends
upon whether, in the exercise of a proper lookout as he entered the
intersection, what he could or should have seen would have been
sufficient to put him on notice, in time to have avoided the accident,
that Grier did not mean to stop in obedience to the flashing red light.
*Stathopoulos v. Shook*, 251 N.C. 33, 110 S.E. 2d 452. The Court fully
charged the jury that Thomas was under the duty to keep a lookout
commensurate with the dangers created by the weather and the
obstructed view to his left, and that he was not relieved of this duty
by the presence of a flashing red light on Fourth Street. He further in-
structed the jury:

> "If the defendant Thomas saw or in the exercise of due care
> in keeping a proper lookout should have seen the defendant
> Grier's vehicle travelling on Fourth Street and approching the
> intersection at such a rate of speed or under such other circum-
> stances that the defendant Thomas, in the exercise of ordinary
> care, knew or should have known that the defendant Grier could
> not, or would not stop, for the blinking red light, then the de-
> fendant Thomas was required to reduce his speed, stop if neces-
> sary, and use all precautions reasonably at his command to avoid
> collision."

Considered contextually, we are of the opinion that the entire
charge fairly presented the case to the jury and that the jurors must
have understood the issue of fact and the law which applied to it.
After hearing all the evidence, the jury reached the conclusion that
no negligence on the part of the Bus Company's driver contributed to
this accident and its tragic consequences. The burden is on the appel-
lant not only to show error but to show that if the error had not oc-
curred there is a reasonable probability that the result of the trial
would have been favorable to him. *Stathopoulos v. Shook, supra.* The
jury having reached the decision it did on the evidence in this case,
we find nothing in the record to suggest that result would be dif-
ferent on another trial.

No error.