IREDELL DIGESTIVE DISEASE CLINIC, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION v. JOSEPH A. PETROZZA, M.D.

No. 8822SC245

(Filed 15 November 1988)

1. **Appeal and Error § 6.2— enforcement of covenant not to compete—denial of preliminary injunction—appealable**

    An appeal from the denial of a preliminary injunction involved a substantial right, and was heard by the Court of Appeals, where plaintiff sought to enforce a covenant not to compete which would run from 3 August 1987 to 30 August 1990, if valid, and more than one-third of that time had elapsed as of the filing of the Court of Appeals' opinion.

2. **Master and Servant § 11.1— covenant not to compete between physicians— preliminary injunction for enforcement denied**

    The trial court properly denied a preliminary injunction to enforce a covenant not to compete between physicians where plaintiff would be unlikely to prevail at trial because the covenant was void as against public policy in that the public health and welfare would be harmed if there were only one gastroenterologist in Statesville. This case is distinguishable from other cases in which covenants between physicians have been enforced in that their enforcement only lowered the number of doctors of a certain specialty within a community, and enforcement here would create a monopoly, and would have an impact on fees and the availability of a doctor for emergencies.

3. **Trial § 9— preliminary injunction—ex parte communication by judge with affiant—no prejudice**

    There was no prejudicial error in an action for a preliminary injunction to enforce a covenant not to compete where the trial judge initiated an ex parte communication by telephone with an affiant to clarify his statement. The judge

noted in his own handwriting on the affidavit the time and substance of the conversation and that the affiant restated his contention in his affidavit.

Judge COZORT dissenting.

APPEAL by plaintiff from *Walker, R. G., Jr., Judge.* Judgment entered 1 October 1987 in Superior Court, IREDELL County. Heard in the Court of Appeals 31 August 1988.

This appeal involves a suit on a covenant not to compete contained within an employment agreement.

*Pope, McMillian, Gourley, Kutteh & Parker, by William P. Pope; and Hall & Brooks, by John E. Hall, for plaintiff-appellant.*

*Vannoy, Moore, Colvard, Triplett & Freeman, by Anthony R. Triplett; and James H. Early, Jr. for defendant-appellee.*

JOHNSON, Judge.

The question presented by this case is whether the trial court erred in denying a request for a preliminary injunction sought by a covenantee-professional association (plaintiff) to enforce against a physician-covenantor (defendant) the terms of a covenant not to compete contained in an employment agreement. The trial court concluded that the plaintiff had failed to present evidence sufficient to establish a likelihood that at trial the plaintiff would be able to show that the covenant was not void as against public policy. We agree.

Plaintiff is a professional association engaged in the business of providing medical services, specifically, gastroenterology and general internal medicine, to patients in Iredell County, with its principal place of business located in the City of Statesville. Plaintiff's president and sole owner is Dr. David G. Kogut, a physician who has practiced internal medicine and its subspecialty, gastroenterology, in Statesville since June of 1979. Plaintiff was incorporated in 1980 as Iredell Digestive Disease Clinic, P.A. Defendant is a physician who also specializes in gastroenterology and internal medicine.

On or about 18 August 1983, plaintiff and defendant entered into an employment agreement (agreement) which provided that defendant would be employed as an associate for a term of three years, beginning on 1 July 1984 and ending on 30 June 1987. At

the time defendant signed the agreement, he had not engaged in the private practice of medicine, having just completed his medical schooling. The agreement set forth a compensation schedule for the three-year period as well as various obligations of the parties with respect to the employment relationship. The agreement also contained a covenant not to compete, which reads:

19. In further consideration of the sum of ONE DOLLAR ($1), to be paid to the Employee by the Corporation on his first day of service, Employee agrees that in the event of his discharge by the Corporation for any breach of this Agreement or any other good cause, whether upon expiration of the term of this Agreement or contrary to the provision of this Agreement, and whether voluntarily or involuntarily, Employee will not thereafter for a period of three (3) years from the date of such termination directly or indirectly, alone or for his own account, or as a partner, member, employee, or agent of any partnership or joint venture, or as a trustee, officer, director, shareholder, or employee or agent of any corporation, trust or other business organization or entity, engaged in, trusted in or concerned with any business having an office or being carried on within a twenty (20) mile radius of Statesville or within a five (5) mile radius of any other hospital or office serviced by the Corporation, whichever is greater, if such business is directly or indirectly in competition with the business of Employer as defined above, namely the general practice of internal medicine or gastroenterology. [sic] The Employee agrees that in the event that he violates the conditions of either (a) or (b) above by establishing a general internal medicine or gastroenterology practice within the above proscribed radius, that he will pay to the Corporation to indemnify the Corporation for the Employee's said breach, the sum of FIFTY THOUSAND DOLLARS ($50,000) immediately upon the commencement of such practice, plus 15% of gross income per year for three (3) years, payment to be made on the first of each month during the three (3) years.

Defendant began employment with plaintiff as anticipated in the agreement, and their association apparently prospered without major conflict until the fall of 1986, when the parties began discussing a partnership arrangement to succeed the 1983 agreement. The parties' versions of the events surrounding the part-

nership discussion are conflicting, with each party accusing the other of negotiating in bad faith. In any event, on or about 31 August 1987, having failed to reach an agreement with plaintiff, defendant informed plaintiff of his resignation. Thereafter, in mid-September of 1987, defendant opened his own office in Statesville for the practice of gastroenterology and internal medicine.

On 18 September 1987 plaintiff filed a civil complaint for breach of contract, including breach of the covenant not to compete. Plaintiff requested equitable relief in the form of a temporary restraining order and a preliminary injunction, and monetary damages under the liquidated damages provision in the agreement. A temporary restraining order was issued by Superior Court Judge Robert A. Collier, Jr., on 17 September 1987. Upon its expiration on 28 September 1987, and after hearing the arguments of counsel and receiving affidavits submitted by the parties, Superior Court Judge R. G. Walker, Jr., denied plaintiff's motion for a preliminary injunction on 1 October 1987, and plaintiff appealed.

[1] A trial court's ruling on a party's motion for a preliminary injunction is an interlocutory order. *Pruitt v. Williams*, 288 N.C. 368, 218 S.E. 2d 348 (1975). No appeal lies from an interlocutory order unless the order deprives appellant of a substantial right which might be lost absent review before final judgment. G.S. secs. 1-277(a) and 7A-27(d)(1). Plaintiff seeks to enforce a covenant not to compete which, if found valid, would run from 31 August 1987 to 30 August 1990. As of the filing of this opinion, more than one-third of that time period has already elapsed. Therefore, failure to hear plaintiff's appeal would involve a substantial right that may be lost before trial on the merits. *See Robins & Weill v. Mason*, 70 N.C. App. 537, 320 S.E. 2d 693 (1984). We will proceed to the merits of the appeal.

[2] The purpose of a preliminary injunction is to preserve the *status quo* of the parties pending trial on the merits. *State v. School*, 299 N.C. 351, 357, 261 S.E. 2d 908, 913, *appeal dismissed*, 449 U.S. 807, 101 S.Ct. 55, 66 L.Ed. 2d 11 (1980). A preliminary injunction is an extraordinary measure, to be issued by the court, in the exercise of its sound discretion, only when plaintiff satisfies a two-pronged test: (1) that plaintiff is able to show *likelihood* of success on the merits and (2) that plaintiff is likely to sustain ir-

reparable loss unless the injunction is issued, or if, in the court's opinion issuance is necessary for the protection of a plaintiff's rights during the course of litigation. *Investors, Inc. v. Berry,* 293 N.C. 688, 701, 239 S.E. 2d 566, 574 (1977). The trial court determined that plaintiff had failed to satisfy either prong. Specifically, the court made the following findings of fact:

1. That plaintiff cannot, through its sole employee, Dr. Kogut, maintain the established level of medical services in the specialty of gastroenterology, to which the public in the locale served by Iredell Memorial and Davis Community Hospitals has become both accustomed and entitled;

2. That the health and welfare of that segment of the public requiring gastroenterological services in the locale served by Iredell Memorial and Davis Community Hospitals would be harmed if only one gastroenterologist was available;

3. That the availability of only one gastroenterologist in the locale served by Iredell Memorial and Davis Community Hospitals would place an undue burden on other medical professionals who might be called upon to provide medical services normally provided by this medical specialty and would thus have an adverse impact upon the delivery of all medical services in the locale served by Iredell Memorial and Davis Community Hospitals;

4. That plaintiff, in its prayer for relief, does not seek to enforce the covenant not to compete contained in the contract between the plaintiff and defendant, but merely seeks to restrain the defendant from practicing the medical specialties of internal medicine and gastroenterology pending the trial of this case;

5. That plaintiff, in its prayer for relief, seeks its provable damages in addition to the lump-sum damages specified in the liquidated damages provision of its contract with defendant.

Based on these findings, the court reached the following conclusions of law:

1. That the plaintiff has not presented sufficient evidence to establish a likelihood that at trial it will be able to

establish that the covenant not to compete is not void as against public policy;

2. That plaintiff has failed to present evidence sufficient to satisfy the undersigned that its remedy at law is inadequate or that its damages are irreparable, or that there exists some right of the plaintiff which ought to be protected by injunctive relief pending trial;

3. That the inclusion in the contract between the parties of a liquidated damages provision specifically measured as a lump-sum plus a percentage of the defendant's gross revenues clearly indicates that the parties contemplated that any damage flowing from a breach of the covenant not to compete would be duly and satisfactorily remedied by an award of money, the amount of which could be easily proven at trial;

4. That, balancing the equities in this controversy, the undersigned should not and will not grant the plaintiff the temporary enforcement of a covenant not to compete pending the trial of this case, especially when the plaintiff has not sought in this action to enforce the covenant not to compete for the full duration as provided in the contract, and that to do so would provide the plaintiff, on a temporary basis, a remedy which would be grossly inequitable.

Plaintiff contends the trial court erred in these findings and conclusions. We do not agree.

In reviewing the denial of a preliminary injunction, although there is a presumption that the lower court's ruling was correct, *Conference v. Creech*, 256 N.C. 128, 123 S.E. 2d 619 (1962), we are not bound by the trial court's findings, but may review and weigh the evidence and find facts for ourselves. *A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E. 2d 754 (1983). Therefore our scope of review is basically *de novo. Robins & Weill* at 540, 320 S.E. 2d at 696.

To be enforceable, a covenant not to compete must be (1) in writing, (2) entered into at the time and as part of the contract of employment, (3) based upon reasonable consideration, (4) reasonable both as to time and territory, and (5) not against public policy. *A.E.P.* at 402-03, 302 S.E. 2d at 760. Whether the covenant is in fact reasonable and enforceable is a matter to be determined

at trial; we look at the evidence presented on plaintiff's motion for the preliminary injunction to decide whether plaintiff has shown a likelihood that the covenant will be upheld when the case is heard on the merits. *Robins & Weill* at 541, 320 S.E. 2d at 696.

The trial court made no findings regarding the first four elements to be established by plaintiff. Nonetheless, on appeal we must consider each challenge to the enforceability of the agreement. *Manpower, Inc. v. Hedgecock*, 42 N.C. App. 515, 257 S.E. 2d 109 (1979).

We find that the covenant not to compete was part of a written employment agreement, signed by the parties following consultation with legal counsel, and was given for valuable consideration. The time and territory restrictions appear to be reasonable and not unduly oppressive. *See Beam v. Rutledge*, 217 N.C. 670, 9 S.E. 2d 476 (1940); *Robins & Weill, supra.* We now address whether the plaintiff's evidence was sufficient to carry its burden of proof in establishing a likelihood of success at trial on the issue of whether the covenant is not void as against public policy.

A covenant not to compete between physicians is not contrary to public policy if it is intended to protect a legitimate interest of the covenantee and is not so broad as to be oppressive to the covenantor or the public. *Beam* at 673, 9 S.E. 2d at 478. Defendant argues on appeal, as he did before the trial court, that the covenant is void on public policy grounds because enforcing the covenant would deprive Statesville residents of necessary medical care. We find no North Carolina decision which has addressed this particular issue. Other jurisdictions considering the question have found relevant the availability of other physicians in the community affected by the covenant. *See, e.g., Cogley Clinic v. Martini*, 253 Iowa 541, 112 N.W. 2d 678 (1962); *Middlesex Neurological Associates, Inc. v. Cohen*, 3 Mass. App. 126, 324 N.E. 2d 911 (1975); *Odess v. Taylor*, 282 Ala. 389, 211 So. 2d 805 (1968). If ordering the covenantor to honor his contractual obligation would create a substantial question of potential harm to the public health, then the public interests outweighs the contract interests of the covenantee, and the court will refuse to enforce the covenant. *See, e.g., Dick v. Geist*, 107 Idaho Ct. App. 931, 693 P. 2d 1133 (1985); and *Lowe v. Reynolds*, 75 A.D. 2d 967, 428 N.Y.S.

2d 358 (1980). But if ordering the covenantor to honor his agreement will merely inconvenience the public without causing substantial harm, then the covenantee is entitled to have his contract enforced. *See, e.g., Marshall v. Covington*, 81 Idaho 199, 339 P. 2d 504 (1959).

Both parties submitted affidavits supporting their respective positions. There is some uniformity among the affidavits on both sides. This is not unusual and does not bear on our assessment of them. Forty-one physicians in Statesville signed affidavits in support of defendant stating that in their view one gastroenterologist would not be able to meet the community's demand for such services; that losing defendant Petrozza's services would create an excessive workload on plaintiff; and would "likely result in undesirable and possibly critical delays in patient care and treatment." They also noted that many patients needing GI (gastroenterological) care are elderly and frail, and would be forced to travel about 40 miles from Statesville if plaintiff Kogut were unavailable or if the patients preferred to see a different gastroenterologist. Affiants further indicated that several emergency situations, such as GI bleeding, liver coma and jaundice, and pancreatitis from biliary stones, occur in the GI field, and could make travel for care life-threatening. They also claimed that defendant Petrozza performs certain highly specialized procedures which plaintiff Kogut does not perform. Three of the physician affiants circulated petitions stating that losing Dr. Petrozza's services would be tragic for the community. These petitions were signed by numerous other physicians.

Plaintiff also submitted affidavits from fourteen Statesville physicians who stated that Dr. Kogut has provided prompt and efficient care, and that they had no knowledge of patients going untreated. They noted that there are presently four surgeons in Statesville who can perform certain semi-surgical procedures performed by gastroenterologists; and that in severe cases patients can be transferred by helicopter from the hospital in Statesville to Baptist Hospital in Winston-Salem, a trip of about forty-five miles.

One internal medicine specialist stated that he and plaintiff Kogut cover each other's cases. He also noted that becoming certified in the subspecialty of gastroenterology requires two ad-

ditional years of training beyond that required to become an internist.

To be sure, there is conflict between plaintiff's and defendant's affidavits as to the precise impact Dr. Petrozza's leaving would have on the community. However, we believe after reviewing the affidavits *de novo*, that the trial court was correct in finding that the public health and welfare would be harmed if there were only one gastroenterologist in Statesville.

In so finding, the trial court acted in accord with the law as enunciated by our Supreme Court when it stated that "[i]t is also proper for the court to take into account probable injuries to persons not parties to the action and to the public if such an injunction were to be issued." *Huggins v. Board of Education*, 272 N.C. 33, 41, 157 S.E. 2d 703, 709 (1967).

Many courts in other jurisdictions have recognized the need to balance the public interest in health care with personal freedom of contract, and have determined that under the particular facts before them, the public interest must prevail. For example, an injunction was denied against an orthopedic specialist where there was testimony of a shortage of such specialists in the county and patients experienced delays in getting appointments. *New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 392 A. 2d 1383 (1978).

A covenant was not enforced against an ear, nose, and throat doctor (under a statute unlike our restraint of trade provision, G.S. Chapter 75), where the court noted that it was common knowledge that specialists were in short supply in the state, and that the public interest was its first consideration. *Odess, supra.* It is noteworthy that in *Odess* there was conflicting testimony as to the number of ear, nose, and throat specialists in the area, just as there is conflict between the affidavits in the case *sub judice* as to the impact enforcing the covenant would have on the community.

In Arkansas, enforcement was denied against an orthopedic surgeon in an action brought by the two employer orthopedic surgeons where the court said enforcement of the covenant would unduly interfere with the public's right to choose the orthopedic surgeon it preferred. *Duffner v. Alberty*, 19 Ark. App. 137, 718

S.W. 2d 111 (1986). A covenant asserted against a defendant speech and hearing pathologist was struck when she argued that the patients she treated were not readily transferable to another therapist. (This argument implies that there were other therapists available.) The court, in ruling for defendant, asserted its concern for potential harm to the public. *Lowe v. Reynolds, supra.*

In *Ellis v. McDaniel*, 95 Nev. 455, 596 P. 2d 222 (1979), the court denied enforcement against an orthopedic specialist who was the only such physician in his small community. Lastly, a court denied enforcement of a covenant against two pediatric and neonatology specialists who were instrumental in developing and maintaining a neonatal intensive care unit. There was substantial testimony that the neonatal unit would suffer greatly without defendants' services, even though the community would still have five pediatricians. *Geist, supra.*

Plaintiff cites us to various cases from other states where restrictive covenants between physicians have been enforced. We are certainly mindful that medical doctors are by no means immune from such agreements. However, it is our opinion that many of the restrictive covenants are distinguishable from the case at bar in that there were usually several other doctors practicing the specialty in question in the community. *See, e.g., Cogley, supra* (over sixty other surgeons in community, many of whom were orthopedists); *Foltz v. Struxness*, 168 Kan. 714, 215 P. 2d 133 (1950) (ten new physicians in community); *Wilson v. Gamble*, 180 Miss. 499, 511, 177 So. 363, 366 (1937) ("the number of physicians in Greenville is amply sufficient . . ., no monopoly was either contemplated by the contracts or will result from their enforcement.").

Given the particular facts of this case, we believe the public's interest in adequate health care must predominate over the parties' freedom of contract. *See*, 14 Williston on Contracts sec. 1639 (Jaeger 3d ed. 1972). The case *sub judice* is distinguishable from many other cases in which covenants between physicians have been enforced, in that their enforcement only lowered the number of doctors of a certain specialty within a community. In the case at bar, enforcement would create a monopoly for Dr. Kogut. In balancing the equities, we must consider the possible ramifica-

tions of creating a monopoly, including impact on fees in the future and the availability of a doctor at all times for emergencies. Should Dr. Kogut be unavailable, it is possible that patients would have to travel about forty-five miles for care, either by car or helicopter. This is more than a mere inconvenience, and could on occasion be life-threatening. The creation of a monopoly also raises the issue of the public's interest in having some choice in the selection of a physician. The doctor-patient relationship is a personal one and we are extremely hesitant to deny the patient-consumer any choice whatsoever. *See Duffner, supra.*

For all the foregoing reasons we find that at a trial on the merits, plaintiff would be unlikely to prevail because his covenant is void as against public policy. Although there are some statements in the affidavits to the effect that a new GI specialist would be hired should Dr. Petrozza's covenant be enforced, we cannot consider this in weighing the equities since such evidence is at this point speculative and not the situation before us.

In light of our finding that plaintiff would not likely prevail on the merits, we deem it unnecessary to address the question of whether plaintiff will suffer irreparable harm if a preliminary injunction does not issue, or whether issuance is necessary to protect its rights pending litigation.

[3] Plaintiff asserts in its first Assignment of Error that the trial judge erred when he initiated an *ex parte* communication by telephone with an affiant for the purpose of clarifying his statement. The plaintiff is correct that the action taken by the trial judge was highly improper and we certainly do not condone it. However, the burden is on plaintiff not only to show error but to show that if the error had not occurred there is a reasonable probability that the result of the trial would have favored him. *Mayberry v. Coach Lines,* 260 N.C. 126, 131 S.E. 2d 671 (1963). Plaintiff has not met this burden. There is no indication that the trial judge considered any evidence outside the affidavit. The judge, in his own handwriting, noted on the affidavit in question the time and substance of the conversation. The notation indicates that the affiant restated the contention in his affidavit that the workload in Statesville requires two gastroenterologists. Although error, the judge's action did not rise to the level of being prejudicial to plaintiff and is not grounds for reversal.

For all the foregoing reasons, we hold that the trial court did not err in denying plaintiff a preliminary injunction, and therefore we

Affirm.

Judge PARKER concurs.

Judge COZORT dissents.

Judge COZORT dissenting.

I believe the trial court erred in denying the plaintiff's request for a preliminary injunction. I must, therefore, dissent from the majority opinion affirming the trial court's order.

The majority holds that "the trial court was correct in finding that the public health and welfare would be harmed if there were only one gastroenterologist in Statesville." In support of this holding, the majority states: "The public's interest in adequate health care must predominate over the parties' freedom of contract." The majority further concludes that enforcement of the contract "would create a monopoly for Dr. Kogut." In so doing, the majority dismisses, as speculative evidence which cannot be considered, Dr. Kogut's testimony that he is searching for a new associate and expects to hire one soon. I disagree with these conclusions.

I first address the majority's conclusion that evidence of Dr. Kogut's hiring of a new associate to replace the defendant is speculative. This evidence is no more speculative than the evidence upon which the majority relies to find harm to the public health and welfare. In fact the majority's conclusions are based on evidence which is much more speculative. There is no evidence that a patient has gone without proper care at those times when Dr. Kogut was the only gastroenterologist in Statesville. It is pure speculation that some rare emergency may arise which might require transporting the patient 45 miles to Winston-Salem. And, of course, not enforcing Dr. Petrozza's covenant would not guarantee that a rare emergency, if one arose, would still not require moving the patient to Winston-Salem.

The majority's opinion that enforcement of the covenant would create a monopoly for Dr. Kogut is even more speculative; in fact, that conclusion has no basis in the record before us. Significantly, the trial court made no such finding. There is no evidence whatsoever that Dr. Kogut is attempting to establish a monopoly; to the contrary, the evidence shows that Dr. Kogut is attempting to hire another gastroenterologist. All the evidence shows that Dr. Kogut's motive in enforcing the covenant is to protect his significant financial investment, which he has a right to do, and not to create a monopoly.

I believe a fair reading of the evidence shows that plaintiff is entitled to injunctive relief. Defendant submitted virtually identical affidavits from forty physicians and from administrators of the two hospitals serving the community. These affidavits express the view that one gastroenterologist would not be able to meet the community's demand for such services, and that losing defendant's services "would likely result in undesirable and possibly critical delays in patient care and treatment." Yet, in an affidavit submitted by plaintiff, one of these same administrators stated that "the caseload of the [plaintiff's] clinic has not suffered if either doctor was out of town."

Plaintiff also submitted affidavits from fourteen Statesville physicians who stated that Dr. Kogut has provided prompt and efficient care and that they had no knowledge of patients going untreated. Affiants stated that, since Dr. Kogut's arrival, four surgeons who perform semi-surgical procedures performed by gastroenterologists had located in Statesville; that GI (gastrointestinal) bleeding, one of the few GI emergencies, could be handled by one of those surgeons; that, in severe cases, patients are often transferred to Baptist Hospital in Winston-Salem forty-five miles away; and that helicopter facilities are available at Baptist and Iredell Memorial Hospitals in Statesville. One affiant, a specialist in internal medicine, stated that he and Dr. Kogut had an arrangement whereby each covered the other's cases when necessary, including GI emergency cases. Uncontroverted evidence also shows that, in addition to treating his patients, Dr. Kogut has had time to obtain and complete a large number of pharmaceutical contracts for major drug companies, has worked with local businesses in conducting preventive medicine programs and cost benefit studies, and, even prior to defendant's arrival in

Statesville, has traveled outside the city to other communities in order to serve patients. Plaintiff also serves patients who reside outside Iredell County.

Finally, as I previously noted, Dr. Kogut stated that he had begun a search for a new associate and expected to hire defendant's replacement soon. Defendant acknowledged that fact in his own affidavit. It is also uncontroverted that at least fifty-four gastroenterologists practice within forty-five miles of Statesville. There is certainly no shortage of specialists in internal medicine in Statesville, as no less than twenty internists have signed affidavits in this case.

The majority relies, in part, on the decision of the Idaho Court of Appeals in *Dick v. Geist*, 107 Idaho 931, 693 P. 2d 1133 (Ct. App. 1985). In that case, the two defendants were pediatricians specializing in neonatology, practicing in Twin Falls, Idaho. They were employed by the plaintiff under an employment contract that contained a covenant not to compete within a twenty-five mile radius of Twin Falls for two years after separation. When the defendants breached the covenant, the plaintiff sought injunctive relief. The court found that while there was conflicting testimony in the record regarding the city's need for pediatricians, six doctors had testified that five pediatricians were not enough to provide the necessary care. Moreover, the court also found that family practitioners in the area could not provide care to critically ill newborns, that the hospital where the defendants would be prevented from practicing was one of two in the state having a long-term respiratory care unit, and that the defendants provided 90% of the critically ill newborn care at the hospital and had been instrumental in developing the intensive care unit. The court further found that many pediatricians are reluctant to engage in neonatal intensive care because providing care for just one critically ill newborn per month is a tremendous burden on a physician's practice. On these facts, the court ruled that the public interest affected by the loss of defendant's services outweighed the benefit derived from enforcing the contract. I believe the case before us is distinguishable. While there is evidence to support a finding that more than one gastroenterologist located in Statesville is *desirable*, nowhere in the record is there evidence that patients needing emergency care will go untreated if the covenant is enforced, that defendant's particular skills are

necessary for the public welfare, that Statesville cannot attract another gastroenterologist, or that there is a shortage of gastro-enterologists in general.

Furthermore, the availability of other practitioners is not the sole factor relevant to the public policy question. Indeed, in cases involving covenants not to compete, including covenants between physicians, more than one public policy is at issue. *Beam v. Rutledge*, 217 N.C. 670, 673, 9 S.E. 2d 476, 478 (1940). Plaintiff invokes its contract rights; defendant invokes the public's right to essential medical care. As our Supreme Court has recognized,

> "[I]t is just as important to protect the enjoyment of an establishment in trade or profession, which its possessor has built up by his own honest application to every-day duty and the faithful performance of the tasks which every day imposes upon the ordinary man. What one creates by his own labor is his. Public policy does not intend that another than the producer shall reap the fruits of labor. Rather it gives to him who labors the right by every legitimate means to protect the fruits of his labor and secure the enjoyment of them to himself. Freedom to contract must not be unreasonably abridged. Neither must the right to protect by reasonable restrictions that which a man by industry, skill and good judgment has built up, be denied."

*Scott v. Gillis*, 197 N.C. 223, 228, 148 S.E. 315, 317-18 (1929), *quoting Granger v. Craven*, 159 Minn. 296, 199 N.W. 10 (1924).

Prior to Dr. Kogut's arrival in 1979, there had never been a gastroenterologist practicing in Statesville. Dr. Kogut has established a successful practice. He recruited defendant, a recent medical school graduate with no private practice experience, to practice in Statesville, and is in the process of bringing another gastroenterologist into the community. In enforcing noncompetition agreements, other courts have emphasized the benefit, both to the public and to the covenantor, that is derived from agreements between young doctors and older or more experienced practitioners. *See, e.g., Ladd v. Hikes*, 55 Or. App. 801, 639 P. 2d 1307, *review denied*, 292 Or. 722, 644 P. 2d 1131 (1982); *Cogley Clinic v. Martini*, 253 Iowa 541, 112 N.W. 2d 678 (1962); *Erikson v. Hawley*, 56 App. D.C. 268, 12 F. 2d 491 (1926); *Granger v. Craven*, 159 Minn. 296, 199 N.W. 10 (1924); and *Freudenthal v.*

*Espey,* 45 Colo. 488, 102 P. 280 (1909). *See also Keen v. Schneider,* 202 Misc. 298, 114 N.Y.S. 2d 126, *aff'd,* 280 A.D. 954, 116 N.Y.S. 2d 494 (1952); *Canfield v. Spears,* 44 Ill. 2d 49, 254 N.E. 2d 433 (1969).

I would hold that the balance of equities tips in plaintiff's favor. Loss of defendant's services will not deprive Statesville of essential medical care. Plaintiff has met its burden of proving likelihood of success on the merits on the public policy issue.

I would also hold that plaintiff has shown that it will suffer irreparable harm if a preliminary injunction does not issue and that issuance is necessary for the protection of its rights during the course of litigation.

In a case involving a noncompetition agreement, where the plaintiff has shown a likelihood of success on the merits, the presumption is that injunctive relief will issue. *A.E.P. Industries v. McClure,* 308 N.C. 393, 406, 302 S.E. 2d 754, 762 (1983). The ultimate relief plaintiff seeks is enforcement of a covenant in which the promised performance is forbearance to act. In order to be enforceable, the covenant must proscribe defendant's activity for a reasonable, limited period of time. *Id.* at 405, 302 S.E. 2d at 762. The trial court below concluded that plaintiff had not shown either irreparable harm, or the necessity for preservation of its rights pending trial, for two reasons: (1) because the prayer for relief in plaintiff's complaint did not include a request for a permanent injunction, and (2) because the inclusion of a liquidated damages provision in the Agreement indicated that the parties intended to limit plaintiff's remedy to monetary relief. I do not agree with either reason.

N.C. Gen. Stat. § 1-485(1) (1987) provides that a preliminary injunction shall issue "[w]hen it appears *by the complaint* that the plaintiff is entitled to the relief demanded . . . ." (Emphasis added.) In its complaint, to which the Employment Agreement was attached, plaintiff set forth all the essential facts to state a claim for breach of the Agreement and, therefore, for injunctive relief. The complaint states that "there is no adequate remedy at law," and prays for a temporary restraining order and a preliminary injunction. Neither the statute nor our case law conditions the issuance of a preliminary injunction on a specific prayer for a permanent injunction. Furthermore, Rule 54(c) of the N.C. Rules of Civil Procedure provides that "[e]xcept as to a party against

whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." N.C. Gen. Stat. § 1A-1, Rule 54(c) (1987). Plaintiff's failure to request a permanent injunction, therefore, does not deprive a court of its equity jurisdiction. The same reasoning applies in the instant case: the crucial factor is not whether plaintiff has *asked* for the proper remedy, but whether plaintiff is *entitled* to it. I would find that, especially in light of *A.E.P. Industries*, plaintiff is entitled to a preliminary injunction. It should be noted that plaintiff has subsequently amended its complaint, as it was entitled to do as a matter of course under Rule 15(c) of the N.C. Rules of Civil Procedure, to include a specific request for a permanent injunction.

Finally, the existence of a liquidated damages provision in the Agreement does not foreclose the equitable remedy. *A.E.P. Industries*, 308 N.C. at 407, 302 S.E. 2d at 762-63. Defendant argues, citing *Bradshaw v. Millikin*, 173 N.C. 432, 92 S.E. 161 (1917), that the liquidated damages clause in this Agreement is "a very detailed provision setting up payment amounts and dates," and it is clear that the parties intended to provide the defendant with the "alternative to perform or pay." In *Bradshaw*, however, the court held that the plaintiff was entitled to an injunction under the usual rule that "[t]he mere insertion in the contract of a clause describing the sum to be recovered for a breach as liquidated damages . . . will not exclude the equitable remedy, and is regarded as put there for the purpose of settling the damages if there should be a suit and recovery for a breach, instead of an action, in the nature of a bill in equity . . . ." *Id.* at 436, 92 S.E. at 163. The court noted that the contract could expressly provide for the payment of a fixed sum as the exclusive remedy, or the contract might clearly indicate that the parties intended that the covenantor had the right to resume his restrained activity upon payment of a sum. The court emphasized that the intention of the parties governs, and the contract must be construed as a whole. *Id.* at 439, 92 S.E. 2d at 165. In the instant case, the contract expressly provides:

> The parties agree that the remedy at law for any actual or threatened breach of this Agreement by either will be inadequate and that both shall be entitled to specific performance

hereof or injunctive relief or both by temporary or permanent injunction . . . in addition to any damages which both may be legally entitled to recover . . . .

The intention of the parties was to allow the parties the right to pursue equitable and legal relief. The specificity of the liquidated damages clause does not, therefore, support the conclusion that the parties intended a "pay or perform" agreement.

For the foregoing reasons, I would find the denial of the preliminary injunction to be error, and I would vacate the order and remand the case to the Superior Court of Iredell County for entry of a preliminary injunction and for further proceedings.