EASTERN CAROLINA INTERNAL MEDICINE, P.A., Plaintiff v. ANNA FAIDAS, M.D., an individual d/b/a COASTAL ONCOLOGY & HEMATOLOGY, Defendant

No. COA01-626

(Filed 7 May 2002)

## 1. Employer and Employee— employment contract—cost sharing provision—restraint on trade

The trial court did not err in a breach of a physician's employment contract action by granting summary judgment for plaintiff employer and by denying summary judgment for defendant employee on the issue of the cost sharing provision of the contract, designed to protect plaintiff against competition by defendant within the three counties described, even though defendant contends the provision is void as an unreasonable restraint of her trade and against public policy because: (1) a forfeiture, unlike a restraint included in an employment contract, is not a prohibition on the employee's engaging in competitive work; (2) a restriction in the contract with does not preclude the employee from engaging in competitive activity, but simply provides for the loss of

rights or privileges if he does so, is not in restraint of trade; and (3) the contract in this case does not prohibit defendant from engaging in the practice of her profession, but only provides that if she does so within the described three county area, she will pay a certain sum for making this choice.

## 2. Employer and Employee— employment contract—liquidated damages

The trial court did not err in a breach of a physician's employment contract action by granting summary judgment for plaintiff employer and by denying summary judgment for defendant employee on the issue of the cost sharing provision of the contract, designed to protect plaintiff against competition by defendant within the three counties described, being a legitimate sum of liquidated damages rather than an unenforceable penalty because of: (1) the nature of the contract; (2) the intention of the parties; (3) the sophistication of the parties; (4) the stipulation of the parties; (5) the fact that the parties are better able than anyone to determine a reasonable compensation for a breach; and (6) the fact that the damages were difficult to ascertain.

Judge WYNN dissenting.

Appeal by defendant from orders entered 23 January 2001 and 27 February 2001 by Judge Benjamin Alford in Craven County Superior Court. Heard in the Court of Appeals 13 March 2002.

*Ward and Smith, P.A., by A. Charles Ellis, for plaintiff-appellee.*

*Glover & Petersen, P.A., by James R. Glover, and Voerman Law Firm, P.L.L.C., by David P. Voerman, for defendant-appellant.*

TYSON, Judge.

Anna Faidas, M.D. ("defendant") appeals the 23 January 2001 order of the trial court granting summary judgment in favor of Eastern Carolina Internal Medicine, P.A. ("plaintiff") and the 27 February 2001 order of the trial court denying her motion for a new trial and/or amendment of the judgment.

### I. Facts

On 21 March 2000, plaintiff filed a complaint alleging a breach of an employment contract ("the Contract") between the parties, dated 22 July 1996, and seeking liquidated damages in the amount of

$109,029.04 from defendant. Defendant denied the claim, asserting that the liquidated damages provision in the Contract was an unenforceable penalty and that the provision was actually a covenant not to compete, void as against public policy.

Both parties filed motions for summary judgment. The trial court found that there was no genuine issue of material fact, denied defendant's motion for summary judgment, granted plaintiff's motion for summary judgment, and entered judgment that plaintiff recover from defendant the sum of $109,029.04, plus interest.

On 25 January 2001, defendant moved for a new trial and/or amendment of the judgment pursuant to Rule 59 of the North Carolina Rules of Civil Procedure. The trial court denied the motion by order filed 27 February 2001. Defendant appeals.

## II.  Issues

The sole issue presented is whether the trial court erred in granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment.

## III.  Standard of Review

Rule 56 of the North Carolina Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2000). On appeal, this Court must view the record in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Aetna Casualty & Surety Co. v. Welch*, 92 N.C. App. 211, 213, 373 S.E.2d 887, 888 (1988). Both parties conceded that there are no issues as to any material facts preventing summary judgment in this case. Having carefully reviewed the record, we affirm the trial court's judgment and order.

Defendant contends that the provision at issue in the Contract, entitled "Cost Sharing," is: (1) void as an unreasonable restraint on her ability to practice her profession and (2) is not a legitimate sum of liquidated damages but rather an unenforceable penalty. Plaintiff argues that the "Cost Sharing" provision is not a covenant not to compete and a valid liquidated damages clause.

The "Cost Sharing" provision provides:

The parties acknowledge and agree that the practice of medicine at the level afforded Employee by Employer requires a large commitment of capital by Employer together with the undertaking by Employer of significant long term indebtedness and lease obligations for the facilities and equipment provided for Employee; that the recruitment by Employer of a qualified physician to replace Employee upon termination of employment is a lengthy and expensive process; and that Employer will sustain economic loss as a result of the termination of employment of Employee and the absence of revenue generated by Employee to offset continuing overhead obligations of Employer. The parties hereby do stipulate that the termination of employment of Employee will result in economic damage to Employer and that under the circumstances herein provided a reasonable estimate of such damage and an equitable reimbursement thereof to Employer by Employee is the Cost Share as herein computed, which Cost Share amount Employee agrees is reasonable and that Employee will pay pursuant to the terms hereof.

In the event that Employee, within one (1) year following termination of employment with Employer for any reason, shall

(a) engage in the practice of medicine within the geographical boundaries of Jones, Pamlico or Craven Counties, North Carolina, (b) become employed with any practicing physician or group practice within the geographical boundaries of Jones, Pamlico or Craven Counties, North Carolina, or (c) become employed by any hospital, clinic or other entity providing health care services within the geographical boundaries of Jones, Pamlico or Craven Counties, North Carolina,

Employee in any such events thereupon shall pay to Employer an amount equal to the Cost Share.

For purposes of the foregoing, the Cost Share amount shall be computed as follows:

(a) The Total Operating Expense of Employer for the fiscal year of Employer immediately preceding the date of termination of employment as reflected on the fiscal year-end financial statements of Employer shall be divided by the number of full-time equivalent physician-employees of Employer during such fiscal

year, and (b) The quotient then shall be multiplied by twenty-five percent (25%) with the product being the Cost Share amount.

For example, the Cost Share with respect to a termination of employment during 1992 is computed using the Total Operating Expense figure of $4,425,000 from Employer's December 31, 1991 financial statements, divided by 13 full-time equivalent physician-employees for a quotient of $340,000, which then is multiplied by twenty-five percent (25%) to produce a Cost Share amount of $85,000.

## A. Covenant Not to Compete

**[1]** Defendant first argues that the "Cost Sharing" provision is void as an unreasonable restraint of her trade and against public policy. We disagree.

This Court has already addressed this issue in *Newman v. Raleigh Internal Medicine Assocs.*, 88 N.C. App. 95, 362 S.E.2d 623 (1987). In *Newman*, the contract provision at issue provided:

Limitation of Practice. If Employee voluntarily terminates Employee's employment within three (3) years of Employee's initial employment by the Corporation and in Wake County, North Carolina, directly or indirectly engages in, owns, manages, operates, controls, is employed by, connected with, or participates in any practice or business *similar* to the type of practice or business conducted by the Corporation at the time of termination, the Employee shall forfeit any salary continuation beyond his base salary draw up to the date of termination.

*Id.* at 97, 362 S.E.2d at 625 (emphasis in original). We held that the provision was not a covenant not to compete. *Id.* at 99, 362 S.E.2d at 626. A " 'forfeiture, unlike a restraint included in an employment contract, is not a prohibition on the employee's engaging in competitive work . . . . A restriction in the contract which does not *preclude* the employee from engaging in competitive activity, but simply provides for the loss of rights or privileges if he does so is not in restraint of trade . . . .' " *Id.* at 100, 362 S.E.2d at 626 (quoting *Hudson v. Insurance Co.*, 23 N.C. App. 501, 503, 209 S.E.2d 416, 418 (1974), *cert. denied*, 286 N.C. 414, 211 S.E.2d 217 (1975) (emphasis in original)).

The dissent attempts to distinguish this case from *Hudson* and *Newman* on the grounds that the employee here would be required to pay a sum of money to her former employer, rather than her former

employer withholding sums due to her. The underlying rational in *Hudson* and *Newman* is that "forfeiture provisions are designed to protect the employer against competition by former employees." The "Cost Sharing" provision at issue here is designed to protect plaintiff against competition by defendant within the three counties described. The defendant only forfeits the "Cost Share" amount upon choosing to engage in competition with plaintiff.

The Contract does not prohibit defendant from engaging in the practice of her profession, but only provides that if she does so within the described three county area, she will pay a certain sum for making this choice. Accordingly, we hold that the "Cost Sharing" provision is not a covenant not to compete and we do not subject it to the strict scrutiny as to reasonableness and public policy required with a covenant not to compete. *See id.* at 100, 362 S.E.2d at 626.

### B. Liquidated Damages

[2] Defendant next assigns that even if the "Cost Sharing" provision is not void as an unreasonable restraint of trade, it is an unenforceable penalty. We disagree. "Liquidated damages are a sum which a party to a contract agrees to pay or a deposit which he agrees to forfeit, if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally recoverable or retainable . . . if the breach occurs." *City of Kinston v. Suddreth*, 266 N.C. 618, 620, 146 S.E.2d 660, 662 (1966) (citing McCormick, *Damages* § 146 (1935) (emphasis in original omitted)). "A penalty is a sum which a party similarly agrees to pay or forfeit . . . but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach, or as security . . . to insure that the person injured shall collect his actual damages." *Id.* (emphasis in original omitted).

Liquidated damages clauses which are reasonable in amount are enforceable as part of a contract and are not seen as penalty clauses. *See* 5 Arthur L. Corbin, *Corbin on Contracts* § 1057 (1964 & Supp. 2000); *see also Knutton v. Cofield*, 273 N.C. 355, 361-62, 160 S.E.2d 29, 34 (1968). Liquidated damages are collectable, but penalties are not enforceable. *Id.* at 361, 160 S.E.2d at 34.

" 'A stipulated sum is for liquidated damages only (1) where the damages which the parties reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where

the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach.' " *Id.* (quoting 22 Am. Jur. 2d *Damages* § 214) (emphasis in original). Whether the liquidated amount is a reasonable prior estimate of damages is determined by the status of the parties at the time of making the contract. *Id.* at 362, 106 S.E.2d at 35.

It is undisputed that defendant breached the Contract. Defendant does not argue that the damages which the parties reasonably anticipated were not difficult to ascertain. We conclude that the first prong of *Knutton* has been satisfied. If either (1) the amount stipulated was a reasonable estimate of damages or (2) it was reasonably proportionate to the actual damages, then the second prong of *Knutton* has also been satisfied.

Defendant argues that the evidence does not establish that the actual damages suffered by plaintiff were reasonably proportionate to the "Cost Share" amount of $109,029.04. The general rule is that the amount stipulated in a contract as liquidated damages for a breach, if not a penalty, may be recovered in the event of a breach even though no actual damages are suffered. *Id.* at 362-63, 160 S.E.2d at 35.

Defendant specifically recognized and stipulated that "the termination of employment of Employee will result in economic damage to Employer" and that "a reasonable estimate of such damage and an equitable reimbursement thereof to Employer by Employee is the Cost Share . . . which Cost Share amount Employee agrees is reasonable."

The dissent focuses on the use of the word "termination" by the parties in the "Cost Sharing" provision and states that if defendant had decided to retire plaintiff would still have suffered the same economic damage. The crucial fact here is that defendant was only required to pay the liquidated damages upon breaching her promise not to compete with plaintiff in the described three county area. While the damages actually suffered by plaintiff in part arise as a result of defendant's termination, the "Cost Sharing" provision is designed to protect the employer against competition by former employees on the basis that the employer recruits the employee, markets the employee, provides the necessary facilities, and establishes a client base for the employee.

The formula provided for determining the "Cost Share" amount is very precise: the total operating expense for 1997 (the year prior to defendant's departure), divided by the number of full-time equivalent physicians employed the preceding year, multiplied by twenty-five percent (25%). Our Supreme Court has approved the use of a mathematical formula to compute liquidated damages. *See id.* at 357, 160 S.E.2d at 31-32. Defendant stipulated that the "Cost Share" amount was a reasonable estimate of the economic damage that plaintiff would suffer upon a breach of the Contract. Additionally, the "Cost Share" amount of $109,029.04 amounted to only three percent (3%) of the 3.5 million dollars produced by defendant for plaintiff in a year.

Considering the nature of the Contract, the intention of the parties, the sophistication of the parties, the stipulation of the parties, the fact that the parties are better able than anyone to determine a reasonable compensation for a breach, and the fact that the damages were difficult to ascertain, we hold that the liquidated damages stipulated were a reasonable estimate of damages and not a penalty. *See Bradshaw v. Millikin,* 173 N.C. 432, 92 S.E. 161 (1917). Accordingly, we hold that the trial court did not err in granting summary judgment for plaintiff and in denying summary judgment for defendant.

Affirmed.

Judge McGEE concurs.

Judge WYNN dissents.

WYNN, Judge dissenting.

Because I believe the "Cost Sharing" provision at issue in Dr. Faidas' employment contract was, in effect, an unenforceable covenant not to compete, or, alternatively, that such provision was an unenforceable penalty, I respectfully dissent from the majority opinion.

This Court's decisions in *Newman v. Raleigh Internal Medicine Assoc.,* 88 N.C. App. 95, 362 S.E.2d 623 (1987) and *Hudson v. Insurance Co.,* 23 N.C. App. 501, 209 S.E.2d 416 (1974), *cert. denied,* 286 N.C. 414, 211 S.E.2d 217 (1975), relied upon by the majority in concluding that the challenged "Cost Sharing" provision is not a covenant not to compete, are inapposite. Indeed, both decisions con-

cern the forfeiture of *future* or *prospective* benefits that would otherwise be paid by the former employer.

In *Hudson*, this Court considered the plaintiff's challenge to a provision in his employment contract. The contract provided that the plaintiff, an insurance agency manager, forfeited his right to a monthly retirement allowance from his former employer, if the plaintiff was licensed to sell, or sold, any kind of insurance in North Carolina during the payment period set forth in the contract. Following his retirement, the plaintiff was entitled to receive 120 consecutive monthly retirement benefit payments pursuant to the contract; the plaintiff made no monetary contribution to the retirement plan, which was funded solely by his former employer. The plaintiff challenged the forfeiture provision as an unenforceable covenant not to compete, arguing that such covenants are valid and enforceable only if given for valuable consideration and if the restrictions are reasonable in scope. The plaintiff reasoned that although he had "not made a financial contribution to the retirement plan, the pension rights ha[d] been earned by him and should not [have] be[en] divested by restrictions on future employment which would not [have] be[en] reasonable under the standards usually applicable to covenants not to compete." *Hudson*, 23 N.C. App. at 503, 209 S.E.2d at 418.

This Court in *Hudson* disagreed, noting that the contractual provision at issue was "not one where the employee agrees to refrain from competitive employment." *Id.* at 502, 209 S.E.2d at 417. While the question of the validity of such a provision had not previously been posed to the appellate courts of North Carolina, other jurisdictions had considered the question and concluded that:

> the forfeiture provisions are designed to protect the employer against competition by former employees who might *retire* and obtain benefits while engaging in competitive employment, and that the employer, as part of a noncontributory plan, can provide for this contingency. [Internal citations omitted.] The Courts additionally conclude that *the forfeiture*, unlike the restraint included in an employment contract, is not a prohibition on the employee's engaging in competitive work but *is merely a denial of the right to participate in the retirement plan* if he does so engage. "A restriction in the contract which does not preclude the employee from engaging in competitive activity, but simply provides for the loss of rights or privileges if he does so is not in

restraint of trade [citations]." *Brown Stove Works, Inc. v. Kimsey*, 119 Ga. App. 453, 455, 167 S.E.2d 693, 695.

*Id.* at 503, 209 S.E.2d at 418 (emphasis added in part). This Court thus drew a distinction:

> between contracts that preclude the employee from engaging in competitive activity and those that do not proscribe competitive employment but provide that *retirement benefits provided solely by the employer* under the terms of the agreement will be payable only in the event the employee elects to refrain from competitive employment.

*Id.* at 503-04, 209 S.E.2d at 418 (emphasis added).

Likewise, in *Newman*, the employee sought to recover post-termination benefits under his employment contract. The plaintiff's employment contract provided for post-termination benefits, consisting of a portion of the plaintiff's base salary, for a period of ninety days following the plaintiff's termination for reasons other than cause, death or disability. A separate "Limitation of Practice" provision in the plaintiff's employment contract provided for the forfeiture of any such benefits if, within three years of his initial employment, (1) the employee voluntarily terminated his own employment, and (2) engaged in a post-termination practice in Wake County that was "similar" to his practice with his former employer.

This Court in *Newman* affirmed the trial court's grant of summary judgment to the employer, holding that the "Limitation of Practice" provision was not a covenant not to compete:

> Plaintiff did not promise not to engage in competitive employment. He agreed to forfeit his rights to any *post-termination benefits* should he decide to engage in a similar practice in Wake County within three years after beginning employment with [the employer]. The provision gives [the employer] no right to interfere with plaintiff's post-termination practice. It allows [the employer] to *avoid paying plaintiff additional sums* if he decides to engage in a similar practice.

*Newman*, 88 N.C. App. 99-100, 362 S.E.2d at 626 (emphasis added). This Court then quoted the above-quoted language from *Hudson* in concluding that the "Limitation of Practice" provision was "not subject to the strict scrutiny with which courts examine" covenants-not-to-compete. *Newman*, 88 N.C. App. at 100, 362 S.E.2d at 626.

As in *Hudson*, the contractual provision at issue in *Newman* concerned the payment of post-termination benefits by the employer to the employee. In contrast, the instant case concerns not the forfeiture of future or prospective post-termination benefits paid by the employer, but the required payment by the employee of a large sum to the employer as compensation for "competing" with the employer. I fail to see a meaningful distinction between the "Cost Sharing" provision at issue herein and a traditional covenant not to compete coupled with a damages provision for breach thereof, as both involve a restraint of trade based upon a disincentive to compete in the form of damages required to be paid by the former employee. *See, e.g., Nalle Clinic Co. v. Parker*, 101 N.C. App. 341, 399 S.E.2d 363 (1991) (concerning a "Practice Limitation" provision and provision for liquidated damages for breach thereof); *see also Iredell Digestive Disease Clinic v. Petroza*, 92 N.C. App. 21, 373 S.E.2d 449 (1988). I therefore believe that the trial court erred in entering summary judgment in favor of plaintiff without any consideration of the reasonableness of the terms of the practice restriction in the "Cost Sharing" provision under a traditional covenant not to compete analysis.

Additionally, I disagree with the majority's categorization of the damages portion of the "Cost Sharing" provision as a liquidated damages provision rather than an unenforceable penalty, based on defendant's specifically recognizing and stipulating in the contract that "the termination of employment of Employee will result in economic damage to Employer" and that "a reasonable estimate of such damage and an equitable reimbursement thereof to Employer by Employee is the Cost Share . . . which Cost Share amount Employee agrees is reasonable." Defendant's stipulation at the time she signed the agreement as to the reasonableness of the damages provision should have no bearing on this Court's independent determination of the reasonableness thereof from a legal standpoint.

Moreover, *Knutton v. Cofield*, 273 N.C. 355, 160 S.E.2d 29 (1968) requires not only that liquidated damages must be difficult to ascertain because of their uncertainty or indefiniteness, but also that the stipulated sum must be (1) a reasonable estimate of the damages which would *probably* be *caused by the breach*, or (2) reasonably proportionate to the damages which have *actually* been *caused by the breach*. *Id.* at 361, 160 S.E.2d at 34. If these conditions are not met, the stipulated sum will be deemed an unenforceable penalty. *Id.* In my view, neither of these conditions has been met in the instant case.

In the "Cost Sharing" provision, the parties acknowledged and agreed that employing Dr. Faidas required "a large commitment of capital by Employer together with the undertaking by Employer of significant long term indebtedness[.]" The parties further acknowledged and agreed that the recruitment of a replacement for Dr. Faidas upon termination of her employment would be "a lengthy and expensive process; and that Employer will sustain economic loss as a result of the termination of employment of Employee and the absence of revenue generated by Employee to offset continuing overhead obligations of Employer." The parties thus stipulated that Dr. Faidas' termination would "result in economic damage to Employer" and that the calculated "Cost Share" was a reasonable estimate of the damage that would likely result from her termination.

Notably absent is any indication that the stipulated "Cost Share" sum was a reasonable estimate of the damages that would be *caused by Dr. Faidas' breach* of the practice limitation, or were reasonably proportionate to the actual damages *caused by the breach*. Rather, the "Cost Sharing" provision specifically acknowledges that these costs would have been incurred by plaintiff upon the termination of Dr. Faidas' employment *under any circumstances*. That is, if Dr. Faidas had decided to retire prematurely, plaintiff would still have suffered the same economic damage as it did under the circumstances present herein. As the "Cost Share" sum was in no way tied to damages *caused* by Dr. Faidas' violation of the practice restriction in the "Cost Sharing" provision, I believe the majority improperly characterizes this sum as an enforceable liquidated damages provision. *See Knutton.*

For the foregoing reasons, I respectfully dissent.