Dr. David DUFFNER *v.* Dr. Joe Paul ALBERTY and Dr. John WIDEMAN

CA 96-156                                    718 S.W.2d 111

Court of Appeals of Arkansas
En Banc
Opinion delivered October 29, 1986
[Rehearing denied November 26, 1986.*]

*Glaze, J., not participating.

138

*Harper, Young, Smith & Maurras*, by: *S. Walton Maurras*, and *House, Wallace, Nelson & Jewell, P.A.*, by: *Philip Dixon*, for appellant.

*Sexton, Nolan, Robb & Caddell, P.A.*, by: *Sam Sexton, Jr.*, for appellees.

GEORGE K. CRACRAFT, Chief Judge. David Duffner appeals

from an order of the Sebastian County Chancery Court enforcing a covenant not to compete and enjoining him from the practice of medicine within a radius of thirty miles from the offices of Joe Paul Alberty and John Wideman for a period of twelve months from the date of entry of the order. The appellant contends that the covenant is void and unenforceable because it violates the public policy of this state which prohibits unreasonable restraints of trade. We agree.

Covenants not to compete are not looked upon with favor by the law. In order for such a covenant to be enforceable, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restriction must not be overly broad; and (3) a reasonable time limit must be imposed. *Rebsamen Ins.* v. *Milton*, 269 Ark. 737, 600 S.W.2d 441 (Ark. App. 1980). It is not argued that the geographic restriction was overbroad or that the time limitation was unreasonable. Appellant contends only that there was not a sufficient interference with appellees' business interests to warrant enforcement of the covenant. It is clear that such covenants will not be enforced unless a covenantee had a legitimate interest to be protected by such an agreement and that the law will not enforce a contract merely to prohibit ordinary competition. *Import Motors, Inc.* v. *Luker*, 268 Ark. 1045, 599 S.W.2d 398 (1980). The test of reasonableness of contracts in restraint of trade is that the restraint imposed upon one party must not be greater than is reasonably necessary for the protection of the other, and not so great as to injure a public interest.

Contracts in partial restraint of trade, where ancillary to a sale of a business or profession with its goodwill, are valid to the extent reasonably necessary to the purchaser's protection, and are looked upon with greater favor than such an agreement ancillary to an employer-employee or professional association relationship. *Madison Bank & Trust* v. *First National Bank of Huntsville*, 276 Ark. 405, 635 S.W.2d 268 (1982); *Marshall* v. *Irby*, 203 Ark. 795, 158 S.W.2d 693 (1942); *Easley* v. *Sky, Inc.*, 15 Ark. App. 64, 689 S.W.2d 356 (1985). Where the covenant grows out of an employment or other associational relationship, the courts have found an interest sufficient to warrant enforcement of the covenant only in those cases where the covenantee provided special training, or made available trade secrets, confi-

dential business information or customer lists, and then only if it is found that the associate was able to use information so obtained to gain an unfair competitive advantage. *See Orkin Exterminating Co., Inc. v. Weaver*, 257 Ark. 926, 521 S.W.2d 69 (1975); *Rector-Phillips-Morse, Inc. v. Vroman*, 253 Ark. 750, 489 S.W.2d 1 (1973); *All-State Supply, Inc. v. Fisher*, 252 Ark. 963, 483 S.W.2d 210 (1972); *Girard v. Rebsamen Ins. Co.*, 14 Ark. App. 154, 685 S.W.2d 526 (1985). The validity of these covenants depends upon the facts and circumstances of each particular case. *Evans Laboratories, Inc. v. Melder*, 262 Ark. 868, 562 S.W.2d 62 (1978).

Here, Dr. Joe Paul Alberty and Dr. John Wideman were orthopedic surgeons who had been engaged in the practice of their profession in Fort Smith, Arkansas, as partners for many years. Appellant completed his residency training in orthopedic surgery in June of 1984, at a clinic in Temple, Texas, and afterwards determined to locate in Fort Smith and associate himself with the appellees. The terms and conditions of appellant's association with the appellees' practice was reduced to a letter agreement. It is not questioned that all of those involved were fully aware of the document's provisions. Under the terms of the agreement the appellees agreed to pay all general expenses and certain specific expenses listed in the agreement were to be paid by the physician who incurred them. Each physician was assigned a private office and paid rent to the Alberty-Wideman partnership. Certain portions of the office and the medical equipment owned by the partnership were to be used in common and the practice would be organized as an association of individual professional associations, but appellant would initially practice as a sole proprietorship. Call schedules would be shared equally. At the end of one year the appellant would arrange financing to buy his share of the equity in the furniture and equipment and would have an option to purchase an interest in the condominium offices. The agreement contained a covenant that should the appellant desire to leave the group he would not practice within a radius of thirty miles of the offices of the appellees for a period of one year from the date of termination. It was agreed that the appellant would be furnished rent and overhead at no expense for the first three months, at one-third the normal rate during the fourth month, and two-thirds that rate in the fifth month. Appellant would begin

paying his equal share beginning with the sixth month. There was no agreement to share income or new patients with the appellant and individual billings were made and collected for services rendered by each physician. Appellant practiced with appellees under this arrangement until late in the spring of 1985, when he joined another orthopedic clinic which conducted its practice in the same building in which the appellees' offices were located.

During the twelve-month period following the commencement of the association, the appellant treated 1207 patients and it was undisputed that during the first nine months of that association his personal receipts were in excess of $300,000.00. After leaving the association with appellees, the appellant requested of them the files on twenty-eight patients, which he testified had been treated by him while the association continued and were receiving follow-up medical attention only. The chancellor specifically found that during the continuance of the agreement the appellant "had access to the confidential patient files of the plaintiffs, had use of plaintiffs' office furniture and equipment, and utilized for his own benefit the good professional reputation and goodwill of the plaintiffs." The chancellor found the restrictive covenant to be reasonable and that the appellees had a valid and enforceable right to protect their substantial investment in their medical practice, and to protect their established medical clientele. An injunction was entered restraining the appellant from engaging in the practice of medicine within a radius of thirty miles from appellees' offices for a period of twelve months commencing on the date of the decree.

Although contracts between individuals ought not to be entered into lightly, all other considerations must give way where matters of public policy are involved. From our review of all the facts and circumstances, we are of the opinion that the contract provision prohibiting appellant from practicing medicine within thirty miles of the City of Fort Smith constitutes an undue interference with the interests of the public right of availability of the orthopedic surgeon it prefers to use and that the covenant's enforcement would result in an unreasonable restraint of trade.

Here the contract did not relate to the sale of a business and its goodwill. The appellees' goodwill remained with them.

The benefits which the appellant obtained from the reputation and goodwill of his former associates would be no greater than that of an employee in any other established business. It is only in those instances where goodwill has, for valid consideration, been transferred that the purchaser has a legitimate pecuniary interest in protecting against its being drained by competition from the seller.

Nor were any trade secrets, formulas, methods, or devices which gave appellant an advantage over the appellees involved here. At the time he joined the association he had received his training and skills elsewhere and brought them with him. There is nothing in the record to indicate that he learned any trade secret or surgical procedures from the appellees which were not readily available to other orthopedic surgeons. To the contrary, the record reflects that while in the association he performed some orthopedic surgical procedures which the appellees did not perform.

Although the chancellor found that the appellant had access to appellees' confidential patient files, there was no evidence that he attempted to memorize them or use information from those files to entice any of their former patients to become patients of his new association. Although there was evidence that he obtained the files on twenty-eight persons from the appellees, it was explained that these were not new patients but those who were receiving follow-up medical attention after having undergone surgery by the appellant during his association with the appellees. Other than those twenty-eight persons receiving post-operative care, he testified that he had not seen more than two of appellees' former patients.

We cannot conclude from the evidence that appellant maintained a personal relationship or acquaintance with appellees' patients or that their "stock of patients" was appropriated by the appellant when he left their offices. There was also evidence that appellees' income increased after appellant left the association. We conclude that the enforcement of this covenant would do no more than prohibit ordinary competition.

Reversed.