**Robert HODDESON, M.D., Appellant,**

v.

**CONROE EAR, NOSE AND THROAT ASSOCIATES, P.A., Appellee.**

**No. 09–88–030 CV.**

Court of Appeals of Texas, Beaumont.

May 19, 1988.

Joan M. Herring and Matthew D. Shaffer, Wood Lucksinger & Epstein, Houston, for appellant.

Tim Herron, Crews & Herron, P.C., Conroe, for appellee.

OPINION

DIES, Chief Justice.

This is an appeal from an order issuing a temporary injunction. This court granted a stay of the injunctive relief granted. Both parties have filed a joint motion waiving oral argument, asking us to consider the appeal immediately, which we herewith proceed to do.

Appellee, Conroe Ear, Nose and Throat Associates, P.A. ("Conroe ENT"), owned entirely by Dr. M. James Dyke, hired Appellant, Dr. Robert Hoddeson. These two physicians comprised all of the physicians working with Conroe ENT, which has three offices in Montgomery County, including one in The Woodlands, a rapidly growing area in the south part of the county rather near to the Houston area. The Woodlands has a hospital which has filed an amicus curiae brief in support of Appellant's position.

When Appellant went to work for Conroe ENT, he executed the following agreement:

"Upon the termination of this Agreement for any reason, Employee agrees that he shall not compete with Company in Montgomery County, Texas in that he shall not practice medicine there as an individual, a partner, an employee of a professional association, an employee of a hospital or in any other manner for five (5) years after such termination. Employee agrees that such geographical limitation and such time limitation are reasonable. However, in the event that they are determined by a court of law not to be reasonable, it shall be reduced to that determined by the court of law to

be reasonable. The parties hereto agree that Company shall be entitled to injunctive relief in such case."

Conroe ENT terminated the agreement two and one-half years later, then sought and obtained the temporary injunction alluded to above, prohibiting Appellant from practicing medicine in Montgomery County, Texas.

Appellant has several points of error, but for the purposes of this opinion, we need only address whether, under the facts of this case, the law will permit a non-competition injunction. Briefly, the facts are: Dr. Hoddeson is a board certified ear, nose and throat specialist. Appellee has three offices in Montgomery County, but apparently, Appellant does most of his work in The Woodlands area. At least he is the only ear, nose, and throat specialist on the staff of the hospital there, and last year, he performed 142 surgeries there, contrasted with 13 performed by his employer. The record shows that in his two and one-half years association with Appellee, Appellant vastly increased his patient load, with most of it coming directly to him and not from Appellee. The record also shows that referring physicians are governed by the skills and qualifications of the receiving physician, rather than his associations. Appellee did not impart trade secrets, specialized training or confidential information to Appellant. Covenants suppressing competition have never been favored in Texas, *see Unitel Corp. v. Decker*, 731 S.W.2d 636 (Tex.App.—Houston [14th Dist.] 1987, no writ), but we think it is accurate to state that since *Hill v. Mobile Auto Trim Inc.*, 725 S.W.2d 168 (Tex.1987), such covenants receive added scrutiny.

The *Hill* court laid down four criteria which such covenants not to compete must meet if they are to survive court scrutiny:

1. The covenant must be necessary for the protection of the promisee. "That is to say, the promisee must have a legitimate interest in protecting business goodwill or trade secrets."

2. The covenant must not be oppressive to the promisor, as courts are hesitant to validate employee covenants when the employee has nothing but his labor to sell.

3. The covenant must not be injurious to the public, since courts are reluctant to enforce covenants which prevent competition and deprive the community of needed goods.

4. The promisee must give consideration for something of value.

While in some respects this covenant not to compete for five years[1] violates each of the four categories, let us briefly focus our attention on number three. The proof shows, without question, that to deny Appellant the right to practice medicine would be injurious to the public, and especially to those in The Woodlands area. As in *Hill*, "[t]his restrictive covenant is plagued by a lack of reasonableness." *Id.* at 171. And, as in *Hill*, the covenant is oppressive to Appellant because "he is now prevented from using his previously acquired skills and talent to support him and his family...." *Id.* at 172. Appellant's talents are his own. "Absent clear and convincing proof to the contrary, there must be a presumption that he has not bargained away the future use of those talents." *Id.* The covenant before us was designed primarily to limit competition or restrain the right to engage in a common calling and "[is] not enforceable." *Id.* (citing *Robbins v. Finlay*, 645 P.2d 623, 627 (Utah 1982)).

There are two competing interests in a covenant not to compete. The first, of course, is the protection of the investment made by many employers in their employees, such as training. The second is that employees be free to exercise their skills. In our case, Appellant received no training or skills from Appellee. The covenant was solely to protect Appellee from competition. *See* Note, *Sakowitz v. Steck: Texas Looks at Covenants Not to Compete*, 38 BAYLOR L.REV. 211 (1986). In the scrutiny of such a covenant, the interests of the public

1. It goes without saying that to enjoin a physician from practicing in a certain county for five years effectively, and for all practical purposes, denies permanently the citizens of that county the services of the enjoined physician.

must also be considered. *Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d 327, 329 (Tex.1981). And, in the case we review, the interests of the public are clearly not in enforcing the covenant not to compete. *See Duffner v. Alberty*, 19 Ark.App. 137, 718 S.W.2d 111, 112 (1986). In such a determination, the three interests involved—the employer's, the employee's, and the public's—must be balanced. "In the absence of special circumstances, a covenant which has as its sole purpose the elimination of competition is not reasonable." *Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657, 663 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

We hold the covenant not to compete in question void and, thus, dissolve the temporary injunction.

BROOKSHIRE, Justice, dissenting.

This dissent is respectfully filed.

Basically this is a dispute between medical doctors who are specialists. The dispute is over a covenant not to compete which is contained in an employment agreement between Dr. Hoddeson and Conroe Associates. Conroe Associates is a professional association headed by James Dyke, M.D. The full, correct name of Conroe Associates is Conroe Ear, Nose and Throat Associates, P.A. (Conroe ENT), which was established in 1972. Conroe ENT operates in the Conroe area, in The Woodlands area, and in Harris County in the F.M. 1960 and IH 45 area.

The Appellant, Dr. Hoddeson's starting salary for his initial employment position was $100,000. This salary was one of the principal conditions of the employment agreement. The non-compete agreement provides that upon termination for any reason Hoddeson agreed that he would not compete with Conroe ENT in Montgomery County in that he shall not practice medicine there in any capacity for five years after the termination. Hoddeson affirmatively agreed that the geographical limitation and the time limitation were both reasonable. There is a specific provision that the parties to the agreement consent that the company shall be entitled to injunctive

relief in case this part of the agreement is broken or breached. Hoddeson carefully consulted with his own independent attorney concerning the terms and provisions of the employment agreement. After full consultation he signed the employment agreement. In my opinion, the practice of a medical specialty such as ear, nose and throat medicine, known as otorhinolaryngology, is not a common calling. This medical specialty requires highly, specially trained and experienced physicians.

The case at bar is certainly distinguishable from *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex.1987). There, Mobile Auto Trim sold car trim franchises; equipped vans were driven to car dealerships to make repairs at the dealership premises. Mobile Auto Trim had sold a franchise to Hill for about $42,000 plus a 5% commission on his gross sales or revenues. The non-compete agreement covered a seven county area.

It has long been established that geographical limitations and time limitations on the promisor's ability to compete must be reasonable. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (Tex.1960). The question of whether a covenant not to compete is a reasonable one has recently been determined to be a question of law for the trial court. *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d at 170 (Tex.1987); *Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983).

There are four tests to determine if an agreement or covenant not to compete is deemed reasonable. First, the covenant must be necessary for the protection of the promisee wherein the promisee has a legitimate interest in protecting his business goodwill. Second, the covenant must not be oppressive to the promisor. Here the courts have reasoned that they did not want to enjoin employees from working who had nothing but their labor to sell. Third, the covenant must not be injurious to the public. Finally, the non-competitive agreement should be enforced if the promisee has given something of value. These four criteria are set out in *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d at 170. As I

read the record, four are shown in the case at bar. In my opinion the non-competitive agreement limitations are reasonable. They certainly are reasonable as to the geographic area. I would hold that a limitation of a three year period would be more reasonable than the five year period provided for.

In *Bergman v. Norris of Houston*, 734 S.W.2d 673 (Tex.1987), a former employer sought an injunction preventing Tracy Bergman from competing for three years within a fifteen mile radius of a certain business location. In *Bergman, id.*, the Supreme Court held in substance that hair stylists were engaged in a common calling and hence, the covenants not to compete were unenforceable as to hair stylists. I respectfully submit that there is a meaningful difference between the works of hair stylists and the practice of otorhinolaryngology.

Physicians and medical specialists, such as the real parties in interest here, ought to have the right of freedom of contract including the freedom to make employment contracts and agreements containing reasonable non-compete agreements. The court in *Bergman* writes that barbering, however labeled, is to be considered a common calling. The court also holds that whether an employee is engaged in the common calling is to be decided from the facts of each case.

There is another matter worthy of our consideration, I opine. The Conroe ENT was started a number of years ago with Dr. Dyke acting as the founding physician. There was no patient base and an office staff had to be developed. The Conroe ENT has been carefully built up as a specialized medical facility over many years. Dr. Hoddeson signed the contract with no mental stress or duress applied. From the first Dr. Hoddeson started seeing an average of eight patients a day in the Woodlands and an additional eight patients a day in Conroe, making an average of about sixteen patients a day. The record tends compellingly to demonstrate that for a new physician, a specialist of his type beginning practice by seeing sixteen patients a day, is astounding.

The agreement also allowed for the Appellant to buy into the practice by purchasing stock in the "company". In fact, there is a special paragraph and provision in the agreement permitting the employee doctor to purchase the stock in the "company".

There existed an additional facility located in Harris County. This facility involved the signing of a year's lease and the moving of furnishings including increased cost of medical malpractice insurance because the facility was located in Harris County rather than Montgomery County. A part of the motivation for establishing this new facility was because of the desire of Dr. Hoddeson.

Some evidence exists that the Appellant has seriously entertained several job opportunities outside of Montgomery County and some others in other states. Appellant had a pending offer to buy into a practice in Georgia which he was still seriously considering at the time of the hearing.

The record reflects that a hospital in Atlanta was currently bidding for the services of the Appellant. The Appellant has been told unequivocally by the hospital in Georgia that it would like to have him aboard. He stated that Atlanta was and is acceptable to him and his wife. Dr. Hoddeson said Atlanta is less humid than the coastal regions of Texas. We find:

Q. Is it safe to say that a person with your training, experience, qualifications, and credentials, which are outstanding, you pretty well have your choice of anywhere you want to go?

A. I think any physician probably has that choice.

Q. I am not talking about a general practitioner. I am talking about someone like yourself, with your credentials, your special qualifications, that you have better than average potential to go anywhere you want to.

A. I would like to think that's true.

The Appellant will, I think, not be unemployed.

I think the record easily demonstrates that there are and will be sufficient eye, nose and throat specialists to serve in the Montgomery County area, including The Woodlands Community Hospital. Certainly, the trial judge had a right to believe under this record that The Woodlands Community Hospital would not be understaffed if Dr. Hoddeson departed. From the record as a whole before us, I would opine that the Appellee has a reasonable, legitimate and ethical interest to protect in keeping those patients that have for a number of years been served by the Conroe ENT. The patient base was an asset that took many years to build up.

Again, under the entire record, the trial court below certainly did not abuse its discretion by issuing the temporary injunction. The record shows sufficient evidence of strong probative force that the applicant-appellee would certainly suffer injury and damages and it had a reasonable and probable basis prevailing on the merits. All the reasonableness tests were met as to geography. I would, under the contract, reduce the time limitation to three years. *See Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960). In his injunction the District Judge found that the Conroe ENT will suffer irreparable harm. I agree. Certainly I would find that the Appellant is not engaged in a common calling.

Dr. Hoddeson had been a graduate of a recognized school of dentistry. He graduated second in his class at the School of Dentistry, making an enviable record. He was in the top ten in his graduating class at the University of Texas Medical School in Galveston. Thereafter, he had one year residency in general surgery and then a four year residency in ear, nose and throat medicine. He is fully qualified in the highly specialized field of otorhinolaryngology. Such indepth training accomplished by Dr. Hoddeson with exceedingly great academic honors and brilliant scholarship achievements are a very, very far cry from training for hair styling or painting trim on automobiles, which are useful and honorable callings. I opine that the applicant for the injunction, being Appellee, lucidly established probable right under the employment agreement. In my opinion the agreement is a valid and binding covenant not to compete. Also, probable injury and large resulting damages are shown by the economic adverse results of Dr. Hoddeson's act in offering to take care of the Appellee's patients and in the fact that the Appellant has already set up a competing practice in Montgomery County. The Appellee is not required to establish that it will *absolutely finally prevail* in the litigation. *Oil Field Haulers Ass'n v. Railroad Commission,* 381 S.W.2d 183 (Tex.1964); *Lambda Construction Co. v. City of Alice,* 729 S.W.2d 377 (Tex.App.—San Antonio 1987, no writ).

Furthermore, the Appellee has a reasonable and valid interest in protecting its professional reputation and goodwill and business goodwill in Montgomery County. These are valid interests that the Appellee has endeavored with hard work and ethical conduct over a period of sixteen years to establish and enhance.

Appellant could definitely practice his excellent specialty in Harris County, which lies adjacent to Montgomery County to the south. Only a small creek separates the two counties. Appellant has had serious conversations and discussions with The Woodlands Hospital. These discussions concern the Appellant's admitting patients and actually working on a regular basis in The Woodlands Hospital which is in the extreme south end of Montgomery County. The hospital has encouraged the doctor to do this, which apparently he is now doing. The record tends to reveal that an executive or person in administrative capacity at The Woodlands Hospital had offered to pay Dr. Hoddeson's attorneys' fees for litigation to eviscerate the covenant not to compete. There is a clear possibility that the attorneys' fees involved in this litigation incurred by Appellant will not be paid by him.

As I read the record, The Woodlands Hospital has given strong, practical encouragement to the Appellant to pursue this litigation to overturn the covenant not to compete.

I respectfully submit that one problem of really important public policy is presented in this case. Under the court's decision today, it seems improbable, if not impossible, for young medical graduates either in the field of general medicine or in a highly specialized field of medicine to be able to have freedom of contract to go into an established clinic at a high (maybe not so high for the medical profession) salary of $100,000 a year. Many other emoluments or "perks" are also frequently offered. Such "perks" include the payment of the premiums for medical malpractice insurance, substantial loans to buy expensive, comfortable housing, dues in clubs and golf courses, and other like "perks".

Furthermore, the trial court found that Dr. Hoddeson having opened a competing practice in Montgomery County will take existing patients from Conroe ENT and further that in the Appellant's setting up an office and practice in Montgomery County will actually cause economic harm and loss of goodwill to the applicant Appellee, resulting in immediate and irreparable loss, injuries and damages to Appellee.

The parties had specially asked us to decide the case on the record before us as if it had been tried on the merits. I can find no findings of fact and conclusions of law. We have been asked to deal with this appeal as if the case had been fully tried upon the final merits. Without any findings of fact or conclusions of law, either requested or filed, before us, the judgment of the court below must be affirmed if the judgment can be upheld on any legal or equitable theory that finds support in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977).

Certainly the trial bench below, sitting as a Chancellor in equity had a right and a duty to balance the equities—that is, all the equities. The district judge also had a right and a duty to weigh the evidence of the witnesses and to evaluate the witnesses and their testimony. In Texas, we boast of having a perfectly blended system of law and equity. Under this record, we certainly should not reverse; we certainly should not reverse the Judge–Chancellor. In balancing the equities among other doctrines, the Chancellor below probably reasoned that the Appellee as promisee furnished to Dr. Hoddeson a highly valuable consideration in signing the employment agreement. Dr. Hoddeson was given full access to an established medical practice and a large number patient clientele at no cost to himself. His salary was clearly adequate. Appellant was not obliged and did not pay overhead expenses involving the maintaining of the medical practice and facilities. Dr. Hoddeson had available to him from the first day expensive medical equipment, office equipment and a trained and adequate staff. According to one cogent version of the evidence which the trial Chancellor had a right to believe, Dr. Hoddeson saw approximately sixteen patients per day at once. He would not have seen sixteen patients per day had he started his own private practice. Under this record the Chancellor had a right and a duty to weigh all of the evidence and testimony. The "Keeper of the King's conscience" obviously decided that the Appellee had fully sustained its burden in meeting the four tests under *Hill v. Mobile Auto Trim, Inc.*, 775 S.W.2d at 170, and *Unitel Corporation v. Decker*, 731 S.W.2d 636, 640 (Tex.App.—Houston [14th Dist.] 1987, no writ). The Chancellor in this case also kept the good conscience of his community, city and county. Historically, the Chancellor was a man of the cloth, a well respected churchman. He consulted his own sense of right dealing and fair dealing as applied to the litigants. The "clean hands" doctrine was before him. I would vote to affirm.