2011 Ark. App. 341

**MERCY HEALTH SYSTEM OF NORTHWEST ARKANSAS, INC., Appellant**

v.

**Ajdahan D. BICAK, M.D., Appellee.**

No. CA 10–1057.

Court of Appeals of Arkansas.

May 11, 2011.

Niki Trang Cung, Fayetteville, for appellant.

Howard Layne Slinkard and Tiffany L. Burnett, Rogers, for appellee.

LARRY D. VAUGHT, Chief Judge.

This appeal is from a circuit court's entry of partial summary judgment in favor of a physician in a lawsuit brought by his former employer for breach of a noncompetition agreement and tortious interference. We affirm the circuit court's decision in all respects.

In 1998, appellant Mercy Health System of Northwest Arkansas, Inc., hired appellee Ajdahan Bicak, M.D., to work as a family practitioner in its facilities in Rogers, Arkansas. The parties entered into an agreement that contained the following covenants:

**A. Covenant Not To Compete.** In consideration of Physician's employment as described in this Agreement and the Forgiveness of Note under the Loan Agreement dated November 20, 1998, Physician hereby agrees that, for the duration of Physician's employment with the Corporation, and for a period of twenty-four (24) months after termination of employment with the Corporation for any reason at any time, Physician will not in any manner directly or indirectly:

1. Disclose or divulge to any other persons, partnership, corporation, business organization, firm, or other entity whatsoever, or use for Physician's own benefit or for the benefit of any other person, partnership, corporation, business organization, firm, or other entity directly or indirectly in competition with the Corporation, any knowledge, information, business methods, techniques, or patient lists, letters, files, records, or other information, of the Corporation other than as may be required by a court with jurisdiction over Physician and the Corporation.

2. Solicit, divert, or otherwise interfere with the patients, patronage, employees, or agents of the Corporation.

3. Engage in the practice of medicine within an eighteen (18) air mile radius from the Corporation's hospital facilities located at 1200 West Walnut Street, Rogers, Arkansas or Physician's primary practice location; provided, however, that treating of patients in hospitals with in [sic] such eighteen (18) air mile radius is not a violation of this subparagraph.

In September 2007, Dr. Bicak notified Mercy that he wanted to terminate the agreement effective December 18, 2007. In November 2007, he notified it that he intended to open a medical practice in Bentonville in early 2008. The same month, he advertised the February 1, 2008 opening of his new office, where his wife would be the office manager, in local newspapers. Mercy sued Dr. Bicak in January 2008. It asked for injunctive relief[1] and damages for his breach of contract in soliciting, diverting, or interfering with Mercy's patients and employees; for using confidential information; for breaching confidentiality of patient records; for failing to cooperate with Mercy in the winding up of his work; for disclosing information related to the business or patients of Mercy to any unauthorized person or entity; and for removing or retaining Mercy's medical records, patient lists, and other confidential information. Mercy later added a claim for tortious interference with its contractual relationships and business expectancies.

Dr. Bicak denied breaching the agreement but pled affirmatively that any breach was excused by Mercy's prior

1. The court later entered an order stating that appellant was no longer seeking an injunction against Dr. Bicak.

breach in imposing on him a disparate obligation to provide coverage of unassigned patients. He moved for summary judgment, arguing that Mercy could not demonstrate that it had made confidential information available to him or that he had used such information to gain a competitive advantage. He contended that the geographic restriction violated public policy because it would require him to relocate outside of Mercy's primary trade area. He asserted that Mercy's motive for enforcing the agreement against him was only to set a precedent, which revealed that the geographic and time limitations were far greater than necessary to protect any legitimate business interest. Dr. Bicak argued that the covenants constituted an unreasonable restraint on trade; that they were against public policy; and that they would restrict his ability to earn a livelihood.

Dr. Bicak also argued that there were no issues of material fact as to whether he had solicited Mercy's employees. He admitted that two of its former at-will employees, Crystal Russell (a scheduler) and Mitzi Underhill (an LPN), had come to work for him; both had testified that they had done so only after Mercy had indicated that their jobs were in jeopardy. Dr. Bicak also argued that he had not tortiously interfered with any business expectancy or contractual relationship of Mercy's. He noted that Mercy's patients received care on a fee-for-service basis and were not required to use its physicians or facilities, regardless of who had treated them in the past; that Mercy had produced no proof that his conduct was improper or motivated by a desire to interfere with Mercy's contractual relations; that Mercy's so-called business expectancy was subject to a contingency—that future patients might not choose to visit it again for their healthcare needs; and that his motive for opening his practice was simply to earn a living.

In support of his motion, Dr. Bicak filed copies of the parties' agreement; his affidavit; excerpts from his deposition and the depositions of Dr. Steven Goss (who managed Mercy's Medical clinics), George Flynn (Mercy's CEO), Doug Sharp (the clinic manager at Mercy Health Center), Mitzi Underhill, and Crystal Russell; excerpts from Mercy's by-laws and rules; Mercy's responses to discovery; and copies of his letters to Flynn and Sharp. In response to Dr. Bicak's motion, Mercy filed excerpts from the depositions of Dr. Bicak, Flynn, Sharp, Underhill, and Russell; a September 25, 2007 letter from Dr. Bicak's counsel to Mercy; and Mercy's answers to interrogatories. Dr. Bicak replied that Mercy had failed to meet proof with proof, noting that it had not provided an affidavit from Angie Guthrie, who was quoted by Sharp as stating that Dr. Bicak had created a patient list. He also noted that Mercy had failed to attach an affidavit from another employee who, it had stated, might have had information about confidential information obtained by Dr. Bicak. He attached an excerpt from the deposition of Dr. Goss, who admitted that he had no first-hand knowledge of whether Dr. Bicak had provided new contact information while employed by Mercy and that Dr. Bicak's knowledge of its compensation packages would not give him a competitive advantage. Mercy supplemented its response to the motion for summary judgment with a copy of the deposition of Cathy Weber–Yocham, who had worked in its laboratory. She testified that Dr. Bicak or his nurse had instructed her to pull all of his outstanding laboratory requisition forms, which were confidential, before she knew that he was leaving; either he or his nurse refused her request to return them.

On June 22, 2010, the circuit court entered a partial summary judgment for Dr.

Bicak, finding that there was no evidence that Mercy had provided him with any special training or trade secrets; that there was no evidence that Mercy had made any effort to safeguard pricing information; that, even if Dr. Bicak had taken patient or pricing information from Mercy, there was no evidence that he had utilized it for his own benefit; that there was no evidence that Dr. Bicak had solicited patients from Mercy; that the geographic restriction was too broad and beyond Mercy's trade area; that the time restriction was unreasonable and designed to block ordinary competition; that there was evidence that Dr. Bicak had removed confidential patient information from Mercy's facilities and that he had disclosed it to his wife; that there was evidence that he had failed to fully cooperate in the winding up of his practice; that there were genuine issues of material fact with regard to his defense of prior breach; and that there was no evidence that he had tortiously interfered with Mercy's contractual relationships or business expectancies.

The court granted Dr. Bicak's motion for summary judgment with respect to Mercy's claims for breach of the covenants not to compete; for using information related to its business or its patients for his own benefit; and for tortious interference. The court denied his motion with respect to Mercy's claims for breaching confidentiality of patient records and information; removal of patient records from Mercy's facilities; and failure to cooperate in winding up his practice. The court found that there was no just reason for delay of the entry of a final judgment and issued a certification pursuant to Arkansas Rule of Civil Procedure 54(b) (2010). Mercy then pursued this appeal.

Summary judgment may be granted by a circuit court only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, clearly show that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Bisbee v. Decatur State Bank,* 2010 Ark. App. 459, at 2, 376 S.W.3d 505, 507–08. When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Id.,* 376 S.W.3d at 509. When a party cannot present proof on an essential element of a claim, the party moving for summary judgment is entitled to judgment as a matter of law. *Caplener v. Bluebonnet Milling Co.,* 322 Ark. 751, 759, 911 S.W.2d 586, 590 (1995).

On appeal, we need only decide if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Bisbee,* 2010 Ark.App. 459, at 3, 376 S.W.3d at 508. In making this decision, we view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.,* 376 S.W.3d at 509. Arkansas Rule of Civil Procedure 56(e) (2010) requires that an affidavit provided for or against a motion for summary judgment be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. A statement that is not based on personal knowledge, but on inadmissible hearsay, will not be accepted as the basis for finding a genuine issue of material fact to deny entry of summary judgment. *Cowan v. Ellison Enters., Inc.,* 93 Ark.App. 135, 142, 217 S.W.3d 175, 179 (2005); *Holt Bonding Co. v. First Fed. Bank of Ark.,* 82 Ark. App. 8, 13, 110 S.W.3d 298, 302 (2003).

Mercy argues that genuine issues of material fact remain as to whether it had a valid interest to protect (such as its patient records, pricing information, and patient lists, which it calls its "stock of customers"); whether Dr. Bicak could have used, and did use, its confidential information to gain a competitive advantage; and whether the geographic and time limitations were reasonable. We disagree.

■■■ A reasonably drawn covenant not to compete is an effective means by which a principal may protect its customers and its confidential information from appropriation and use by former agents and competitors. *Statco Wireless, LLC v. Southwestern Bell Wireless, LLC,* 80 Ark.App. 284, 299, 95 S.W.3d 13, 22 (2003). Covenants not to compete are not looked upon with favor by the law; in fact, it is contrary to public policy to unduly restrict the public's right of access to the physicians of their choice. *Duffner v. Alberty,* 19 Ark.App. 137, 141, 718 S.W.2d 111, 113–14 (1986). In order for such a covenant to be enforceable, three requirements must be met: (1) the covenantee must have a valid interest to protect; (2) the geographical restrictions must not be overly broad; and (3) a reasonable time limit must be imposed. *Id.* at 139, 718 S.W.2d at 112. The test of reasonableness of contracts in restraint of trade is that the restraint imposed upon one party must not be greater than is reasonably necessary for the protection of the other, and not so great as to injure a public interest. *Id.,* 718 S.W.2d at 112. Unless the covenantee has a legitimate interest to be protected by the agreement, the law will not enforce such a contract, as this would merely prohibit ordinary competition. *Id.,* 718 S.W.2d at 112.

■■■ Contracts in partial restraint of trade, where ancillary to the sale of a business or profession with its goodwill, are valid to the extent reasonably necessary for the purchaser's protection, and are looked upon with greater favor than agreements ancillary to employer-employee or professional association relationships. *Id.,* 718 S.W.2d at 112. When the covenant grows out of an employment or other associational relationship, the courts have found an interest sufficient to warrant enforcement of the covenant only in those cases where the covenantee provided special training or made available trade secrets, confidential business information, or customer lists, and then only if it is found that the associate was able to use the information so obtained to gain an unfair competitive advantage. *Id.* at 139–40, 718 S.W.2d at 112.[2] The validity of such a covenant depends upon the facts and circumstances of each particular case. *Id.* at 140, 718 S.W.2d at 113. The courts are less likely to uphold a restriction that negatively affects a person's potential employment and ability to earn a livelihood. *Dawson v. Temps Plus, Inc.,* 337 Ark. 247, 255, 987 S.W.2d 722, 727 (1999). A business cannot use a covenant not to compete to eliminate competition. *Rebsamen Ins. v. Milton,* 269 Ark. 737, 744, 600 S.W.2d 441, 444 (Ark.App.1980). In determining whether the geographic area is reasonable, the trade area of the former employer is viewed. *Jaraki v. Cardiology Assocs. of Ne. Ark., P.A.,* 75 Ark.App. 198, 207, 55 S.W.3d 799, 804 (2001). Where a geo-

**2.** The parties disagree as to whether the phrase "was able to use" means "did use" in determining whether the employer had a valid interest to protect. We agree with Mercy that the logical construction of these cases focuses on the ability of the employee to use such information. Whether he actually did so is relevant to a claim for breach of contract. *See Bendinger v. Marshalltown Trowell Co.,* 338 Ark. 410, 417 n. 3, 994 S.W.2d 468, 472 n. 3 (1999).

graphic restriction is greater than the trade area, the restriction is too broad and the covenant not to compete is void. *Id.*, 55 S.W.3d at 804.

In his affidavit, Dr. Bicak stated that he had never collected patient names for use in his new clinic; that he had never instructed staff members to give patients his new contact information; and that he had not taken any patient lists with him. In their depositions, Flynn and Dr. Goss admitted that Mercy had provided Dr. Bicak with no special training. Flynn admitted that Dr. Bicak may not have learned any confidential information from Mercy and that he did not know whether Dr. Bicak had taken a patient list with him. He said that Sharp would be more likely to know that information; when questioned, however, Sharp testified that he had no personal knowledge of Dr. Bicak's removing or copying patient lists. Flynn also admitted that he had no evidence that Dr. Bicak had solicited any former patients. Dr. Goss could not say if Dr. Bicak had taken a list of patients or provided them with his contact information, and testified that he had no direct knowledge of whether Dr. Bicak had removed any confidential information. Sharp stated that Barbara Kunkel had reported to him that Russell was giving Dr. Bicak's patients his address and that Angie Guthrie had told him (Sharp) that Dr. Bicak's staff was putting a patient list together. He admitted, however, that he had not seen a list; that he had no personal knowledge of Dr. Bicak's soliciting any patients; and that Russell was the only person that he knew had given Dr. Bicak's new contact information to patients.

Dr. Goss admitted that eighty-five percent of Mercy's fees for services were fixed by a third party. Flynn admitted that patients, physicians, insurance companies, and possibly nurses and accounting department employees, knew or had access to Mercy's pricing information, which was not kept under lock and key. He acknowledged that Mercy took no steps to ensure its confidentiality and that it did not give Dr. Bicak a competitive advantage. He also said that Mercy's primary trade area is Benton County but that it draws patients from Washington, Madison, and Carroll counties in Arkansas and southwest Missouri. He stated that twenty-four months would give Mercy enough time to replace a physician.

The circuit court did not err in granting partial summary judgment to Dr. Bicak on the covenant-not-to-compete claim because Mercy did not counter the evidence demonstrating that it had no interest sufficient to warrant its enforcement; that it was designed only to eliminate competition; and that it would unreasonably interfere with the public's right of access to the physicians of their choice and Dr. Bicak's ability to earn a living. Accordingly, we affirm on this point.

Mercy next argues that genuine issues of material fact remain as to whether Dr. Bicak breached the agreement by using its business information for his own benefit, noting that two members of its staff went to work for him and that it produced evidence that he created a potential client list. The evidence, however, showed that the employees went with Dr. Bicak of their own accord, not at his solicitation. Also, Mercy's only evidence of a potential client list was hearsay and, therefore, not sufficient to withstand a motion for summary judgment. *See Cowan*, 93 Ark.App. at 142, 217 S.W.3d at 179; *Holt Bonding Co.*, 82 Ark.App. at 13, 110 S.W.3d at 302. Mercy's assertion that it could have developed more facts if the court had not stayed a subpoena duces tecum on April 3, 2010, for Dr. Bicak's deposition and the production of his new

clinic's financial documents, is not well taken. As the circuit court noted, Mercy failed to request a continuance of the hearing on the motion for summary judgment in order to complete discovery. We affirm on this point.

In its last point, Mercy argues that a genuine issue of material fact remains as to whether Dr. Bicak tortiously interfered with its valid business expectancy—its continued relationships with its patients. Tortious interference with a contractual relationship or business expectancy is intentional and improper conduct by a person that induces or otherwise causes a third person not to perform a contract. *Gunn v. Farmers Ins. Exchange*, 2010 Ark. 434, at 3, 372 S.W.3d 346, 350. The elements of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Baptist Health v. Murphy*, 2010 Ark. 358, at 7, 373 S.W.3d 269, 277–78. There can be no claim for tortious interference where a business expectancy is subject to a contingency. *Windsong Enters., Inc. v. Upton*, 366 Ark. 23, 30, 233 S.W.3d 145, 152 (2006). The law requires that the conduct of the defendant be at least "improper"; for guidance as to what is improper, consideration should be given to the following factors: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties. *Baptist Health*, 2010 Ark. 358, at 7, 373 S.W.3d at 277–78. In this case, there was no evidence of any improper motive on the part of Dr. Bicak, who was simply attempting to earn a living and satisfy his obligation not to abandon his patients. Additionally, Mercy's business expectancy was subject to a contingency—that its patients *might* return to it for health care in the future. We also affirm on this point.

Affirmed; appellee's motion for costs and attorney's fees denied.

GLADWIN and HOOFMAN, JJ., agree.