LARRY D. VAUGHT, Judge
Appellant Bud Anderson Heating and Cooling, Inc. (BAHC), appeals the Benton County Circuit Court's denial of BAHC's complaint for injunction and temporary restraining order against appellee Mike Neil seeking to enforce a noncompete agreement Neil signed while employed by BAHC. We reverse and remand.
BAHC provides services for heating, ventilation, and air-conditioning ("HVAC") equipment and also sells HVAC units and indoor-air-quality products such as duct cleaning services, filters, and UV lighting to residential customers. BAHC hired Neil as a salesperson in 2002. On February 19, 2013, Neil signed a noncompete agreement with BAHC. The noncompete agreement restricted Neil from competing in Washington, Benton, Madison, or Carroll counties for twelve months after the termination of his employment with BAHC. Neil reviewed the terms of this noncompete agreement again in 2014, about a year after signing it.
Before working at BAHC, Neil had no experience in the HVAC industry. Throughout his employment with BAHC, Neil was consistently ranked as a top salesperson. When Neil began employment at BAHC, he received on-the-job sales training, although the parties presented conflicting evidence as to how much of that training was provided by BAHC and how much he undertook on his own. Through his sales job, Neil became familiar with BAHC customers, including knowledge about the age of customers' HVAC units, which gave him insight into which customers were likely to be in the market for new HVAC units. Neil also learned financial information about customers, such as their present and future ability to purchase a unit or other equipment. In his work, Neil had intimate knowledge of BAHC's pricing structure. Specifically, Neil became familiar with the lowest retail price at which BAHC could sell products.
*821 On June 6, 2016, Neil turned in his letter of resignation to BAHC and began working for Absolute Heat and Air, LLC ("Absolute").[1] Absolute is located approximately two miles from BAHC's office in Lowell and serves the same areas in Northwest Arkansas that BAHC serves. Absolute sells the same kind of indoor-air-quality products and UV lighting that BAHC provides, although there was disputed testimony as to whether they target the same markets. Absolute primarily focuses on new construction and commercial customers, while BAHC primarily focuses on the residential market, but it is unclear how much these target markets overlap. Neil signed and submitted a price bid for an HVAC product to a former residential customer of BAHC's on behalf of Absolute. BAHC also submitted a bid for this very same job.
BAHC brought suit to enforce the noncompete agreement. After dismissing Absolute, the only issue before the court was an injunction seeking to enforce the noncompete agreement. At the final hearing, the circuit court found that BAHC had proved it maintains a protectable interest in its customer list. However, the circuit court denied any injunctive relief finding that there was no evidence that "Neil 'was able to use' information obtained from BAHC." BAHC filed a timely notice of appeal.
Before addressing BAHC's first argument on appeal, we must address Neil's contention that the appeal is moot. Neil argues that, because the terms of the noncompete agreement specifically applied for a period of one year after termination of employment, and since more than a year has now elapsed since Neil resigned, there can be no enforceable remedy under the contract, making the appeal moot. BAHC contends that this case falls within the "capable of repetition yet evading review" exception to the mootness doctrine, relying on language to that effect in Box v. J.B. Hunt Transport, Inc. , 2017 Ark. App. 605, at 3-4, 533 S.W.3d 603, 607.
A case becomes moot when any judgment rendered by a court would have no practical legal effect on a previously existing legal controversy. Ark. State Highway & Transp. Dep't v. O.J.'s Serv. Two, Inc. , 2015 Ark. 388, at 3, 473 S.W.3d 24, 25. Neil's mootness argument hinges on the premise that BAHC cannot be awarded a prospective one-year injunction that extends beyond the one-year-from-date-of-termination period specified in the contract. This is a contested point of law on which it would be improper to dismiss BAHC's appeal as moot.
Other jurisdictions have expressly recognized that "even though the terms of the noncompete clause have expired, it is not beyond the court's power to fashion an equitable remedy by extending the term of noncompetition for a period of one year from the issuance of the injunction." See Hodges v. Schlinkert Sports Assoc., Inc. , 89 F.3d 310, 312 (6th Cir. 1996) ("Alabama law appears to permit its trial courts to award equitable relief after trial by extending the operation of a noncompetition clause beyond its expiration date in response to a request for general equitable relief."). Similarly, in Tropicana Prods. Sales, Inc. v. Phillips Brokerage Co. , 874 F.2d 1581, 1583 (11th Cir. 1989), the Eleventh Circuit Court of Appeals stated that "this Court has been willing after trial on the merits to extend injunctive relief beyond the period of time which might be *822 established under the literal terms of a disputed contract." It went on to say that "Tropicana's claim on the merits is not mooted by the 90-day durational limit set forth in its agreement with Phillips." Tropicana Products and Sales, Inc. , 874 F.2d at 1583. Finally, we note that in Duffner v. Alberty , 19 Ark. App. 137, 718 S.W.2d 111 (1986), which is the case on which the circuit court relied in applying the "able to use standard" below, we reviewed a noncompete case in which the circuit court had awarded "[a]n injunction ... for a period of twelve months commencing on the date of the decree. " Duffner , 19 Ark. App. at 141, 718 S.W.2d at 113 (emphasis added). Duffner was decided on other grounds, and the availability of prospective injunctive relief after the expiration of the contractual noncompete period was not addressed in our opinion, but the procedural history in Duffner adds weight to the argument that such relief is available under Arkansas law.
The dissent argues that BAHC did not specifically request a one-year prospective injunction in its complaint and cannot seek that remedy for the first time on appeal. However, the record below reflects that BAHC sought general equitable relief in the form of an injunction, then repeatedly asked the circuit court to issue an injunction running for one year from the date of the order, and both Neil and the circuit court understood that to be the remedy sought. Moreover, BAHC's arguable failure to articulate that specific relief in its complaint is a legal issue that has never been raised by Neil and has never been ruled on by the circuit court. Therefore, it is not clear and obvious on the record before us that BAHC could not obtain the relief it seeks on appeal, a one-year prospective injunction. To hold otherwise would be to base a mootness dismissal on our determination of a substantive legal argument that is not before us.
Alternatively, the litigation of a noncompete agreement falls within the capable-of-repetition-yet-evading-review exception to the mootness doctrine. See Honeycutt v. Foster , 371 Ark. 545, 268 S.W.3d 875 (2007). This exception applies to cases in which the justiciable controversy will necessarily expire or terminate before adjudication. Wright v. Keffer , 319 Ark. 201, 890 S.W.2d 271 (1995). Examples of such cases are abortion-law challenges, election-procedure cases, and cases involving various court procedures. Shipp v. Franklin , 370 Ark. 262, 267, 258 S.W.3d 744, 748 (2007). Because there is well-established Arkansas law limiting the time period for which a former employee may be restricted from competing, the litigation of noncompete agreements falls within this exception. According to Howard W. Brill and Christian H. Brill, Arkansas Law of Damages § 19:3 (6th Ed. 2014), "[w]hile the courts have upheld time limits of one year and two years, restrictions of three years and five years were unreasonable and invalid." The dissent's position that appeals concerning a noncompete agreement become moot once the contractual noncompete period has expired would place Arkansas employers between a rock and a hard place: designation of a longer restrictive period would likely be struck down as unreasonable, while limiting the restriction period to comply with the law would effectively cut off the employer's ability to obtain appellate review. It is not our role to prohibit noncompete agreements in Arkansas; to impose impossible-to-reconcile legal requirements would do just that.
We now turn to the merits of BAHC's appeal. To the extent that BAHC argues that the circuit court applied the wrong legal standard, we review questions of law de novo.
*823 Weigh Sys. S., Inc. v. Mark's Scales & Equip., Inc. , 347 Ark. 868, 873, 68 S.W.3d 299, 301 (2002). BAHC also challenges the sufficiency of the evidence as to some of the circuit court's findings. The standard for evidentiary matters decided in a bench trial is "not whether there is substantial evidence to support the finding of the court, but whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence." Optical Partners, Inc. v. Dang , 2011 Ark. 156, at 14, 381 S.W.3d 46, 55 ; Ark. R. Civ. P. 52(a). A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." Essential Accounting Sys., Inc. v. Dewberry , 2013 Ark. App. 388, at 5, 428 S.W.3d 613, 616.
BAHC argues that the circuit court applied the wrong legal standard in determining whether to grant the injunction. Specifically, it challenges the circuit court's use of the "able to use" standard from Duffner v. Alberty , arguing that it is an incorrect statement of law, or alternatively, that it was misapplied in this case. BAHC first argues that the Duffner "able to use" language "has either been ignored or rejected in subsequent cases." BAHC waived this argument below. While not citing Duffner , BAHC argued in its "Plaintiff's Reply to Defendant's Post Trial Brief" for the exact legal standard it now asserts as error:
Finally, the fact that BAHC won the Anderson job is irrelevant because, as stated above, Arkansas law does not require a party seeking to enforce a noncompete agreement to prove that the former employee is actually utilizing the proprietary information. "The question is whether [the former employee] would be able to use the information obtained to gain an unfair competitive advantage." Statco Wireless v. Southwestern Bell Wireless , 80 Ark. App. 284, 295, 95 S.W.3d 13, 19 (2003).
Therefore, BAHC acquiesced to use of the "able to use" standard and cannot now argue that it is contrary to controlling law.
BAHC also argues that the court incorrectly applied the "able to use" standard by requiring it to prove that Neil had "actually used" BAHC's proprietary information to obtain an unfair competitive advantage. BAHC is correct that an "actual use" standard would be contrary to established law. We have never before required proof that the former employee has actually used the employer's protected interest at the time of trial. We have stated that the "able to use" standard focuses on the ability of the employee to use such information rather than proof of actual use. Mercy Health Sys. of Nw. Arkansas, Inc. v. Bicak , 2011 Ark. App. 341, at 9, 383 S.W.3d 869, at 875.
The court's order states that
[t]he second prong in determining whether there is a valid protectable interest is whether the employee was able to use the information to gain an unfair advantage. The phrase "was able to use" suggests that there needs to have been at least one specific instance where the former employee used the former employer's information to gain a competitive advantage over the employer. Because there is no evidence in the record that Neil "was able to use" information obtained from BAHC, Neil's activities do not rise to the level of unfair business competition.
This language clearly demonstrates that the court was applying an "actual use" standard unsupported by our case law. While the court's subsequent application of that incorrect standard was inconsistent, it seems to have been the deciding factor as to at least one of BAHC's protected interests: regarding Neil's familiarity with *824 BAHC's customers, the court found that "even if Neil could potentially use this knowledge ... there is no evidence showing that Neil has done so." Here, the court seems to be applying the incorrect "actual use" standard. We therefore reverse and remand for a correct application of the Duffner "able to use" standard.[2]
Reversed and remanded.
Abramson, Virden, and Klappenbach, JJ., agree.
Hixson and Murphy, JJ., dissent.

On the day of his resignation, Neil turned in all of his company-owned property except for his "price book," which he kept in his possession for two days before returning it to BAHC.

BAHC also asks us to reverse the finding that it did not have a protected interest in items other than its customer lists. We do not reach this issue because the court specifically applied the "able to use" standard in determining that BAHC had no protected interest in other items. Our ruling remands this case for a correct application of the correct standard as to all issues.